DEBORAH ANNE BRITT, WIDOW; CHRISTINA CAROL BRITT, CHILD, BY HER GUARDIAN AD LITEM, DEBORAH ANNE BRITT; HARVEY C. BRITT, DECEASED, EMPLOYEE v. COLONY CONSTRUCTION COMPANY, EMPLOYER STANDARD FIRE INSURANCE COMPANY, CARRIER AND/OR CUMBERLAND UTILITIES, INC., EMPLOYER; AETNA INSURANCE COMPANY, CARRIER

No. 7710IC155

(Filed 17 January 1978)

1. **Master and Servant § 49.1— workmen's compensation—contractor and subcontractor—employee of which employer**

   The Industrial Commission did not err in finding that decedent was an employee of defendant utility company rather than of defendant construction company when he was killed while working on the relocation of water lines for a highway construction project, and that a contractor-subcontractor relationship existed between the construction company and the utility company, where the evidence showed that the construction company was the general contractor for the highway project; the utility company was hired by the construction company to relocate water lines for the project; decedent was a member of the crew hired by the utility company; in order to circumvent a requirement that subcontractors on a highway project must be approved by the State, members of the crew supplied by the utility company were listed as "employees" of the construction company, paid by the construction company by its checks, and

Britt v. Construction Co.

shown on construction company W-2 and W-4 forms; the construction company deducted from sums otherwise due to the utility company the amounts it paid as wages to the utility company crew, payroll taxes on those wages, and workmen's compensation premiums and other insurance for the crew; only the utility company had the right to hire and fire the work crew; the utility company decided where members of the crew would work each day and its employee directed the crew in the performance of its work; the utility company used the crew on other unrelated projects during the time covered by its contract with the construction company and maintained separate payrolls for the crew members; the classification and pay rates of the crew members were determined by the utility company; and crew members were transported to and from the work site in a utility company vehicle.

**2. Master and Servant § 71.1— workmen's compensation—average weekly wage—wages from two sources**

The Industrial Commission properly determined that a deceased employee's average weekly wage was the aggregate of wages he received from both a contractor and a subcontractor where the Commission found that decedent in fact was an employee only of the subcontractor and that the subcontractor ultimately paid the contractor for wages it paid to the decedent.

**3. Master and Servant § 81— workmen's compensation—death benefits—estoppel of carrier to deny liability**

Where a contractor and subcontractor agreed that members of the subcontractor's work crew would be considered as "employees" of the contractor while working on a highway construction project, the contractor was reimbursed by the subcontractor for wages it paid to the crew and for workmen's compensation insurance premiums it paid on those wages, a member of the subcontractor's work crew was killed while working on the highway project, and the Industrial Commission found that decedent was in fact an employee of the subcontractor, the contractor's workmen's compensation insurance carrier was estopped to deny that it was liable for a portion of the workmen's compensation benefits due because of the employee's death if it accepted premiums for workmen's compensation insurance on the deceased employee.

APPEAL by defendants Cumberland Utilities, Inc. and Aetna Insurance Company from order of the North Carolina Industrial Commission entered 29 December 1976. Heard in the Court of Appeals 8 December 1977.

Plaintiffs instituted this proceeding before the Industrial Commission (Commission) to recover benefits allegedly due them under the Workmen's Compensation Act because of the death of employee Harvey C. Britt (Britt). A hearing on the claim was conducted by Deputy Commissioner Richard B. Conely.

The parties stipulated that on 14 April 1975 they were subject to the Workmen's Compensation Act; that on said date Stand-

ard Fire Insurance Company (Standard Fire) was the carrier for
Colony Construction Company (Colony) and that Aetna Insurance
Company (Aetna) was the carrier for Cumberland Utilities, Inc.
(Utilities); and that on said date Britt sustained an injury by acci-
dent arising out of and in the course of his employment, resulting
in his death.

The contested issues were: (1) Who was Britt's employer at
the time of his injury? (2) What was his average weekly wage at
the time? (3) Which carrier was responsible for compensation?

Colony and Standard Fire contended that Britt was an
employee of Utilities at the time of his injury and that Aetna was
responsible for compensation. Utilities and Aetna contended that
he was an employee of Colony at the time and that Standard Fire
was responsible for the compensation.

Following a hearing, Deputy Commissioner Conely found
facts summarized (except where quoted) in pertinent part as
follows:

In January 1975 Utilities hired a full crew of men away from
another company. The crew included Archie S. Hunt and Britt. 20
January 1975 was the first day of employment of said crew by
Utilities.

On 2 January 1975 Robert M. McNeill, president of Utilities,
mailed a written proposal to Colony wherein Utilities proposed to
furnish all labor and equipment required to lower and relocate the
existing water lines under Owen Drive Expressway in Cumber-
land County, North Carolina. Said work was contemplated in a
contract entered into by Colony with the North Carolina Depart-
ment of Transportation (D.O.T.) on highway projects 8.2326306
and 8.2326307 (hereinafter sometimes referred to as 306 and 307).
Said projects involved Federal aid. As part of its proposal,
Utilities offered to include testing and sterilization of the new
lines before connecting them with existing lines and promised
strict adherence to the specifications for the projects at all times;
it was understood that the Post Engineer at Fort Bragg and the
D.O.T. would be in charge of inspection of the work. Each item of
work was to be paid for on a unit price basis. (The unit price was
shown on the exhibits to be a stated amount for each lineal foot of
pipe installed.)

On 9 January 1975, S. D. Cribb, vice-president of Colony, sent a counter-proposal to Utilities which, on 10 January 1975, was acknowledged and accepted by McNeill on behalf of Utilities. The resulting contract provided, among other things, that Utilities would furnish labor, equipment, organization and incidental tools for the installation and testing of items of work done on said projects; that payment was to be made on a unit price basis less 10% retainage and less "advances." Colony was to furnish all necessary materials. Utilities was to complete the work within a reasonable time and under the "supervision and coordination of" Colony's project manager.

Colony was the general contractor of said projects and Utilities was a subcontractor thereon although Utilities was not approved as a subcontractor by the State and did not bid directly on the projects as a subcontractor.

After Colony and Utilities had entered into the aforesaid contract, McNeill and Cribb discussed the manner in which payment was to be made to Utilities and to the crew of employees supplied by Utilities for the work. The agreement they reached was as follows: that the employees supplied by Utilities would be listed on Colony's payroll as Colony employees; that said employees would be shown on Colony W-2 forms and W-4 forms; that said employees would be paid by Colony with its checks, based upon the records kept by Archie S. Hunt, at regular Colony pay periods; since D.O.T. paid Colony on a monthly basis, Colony would pay Utilities on a monthly basis for work performed and for which Colony had been paid, based upon the unit prices agreed to, less 10% retainage, less the gross amount of payroll paid to employees supplied by Utilities, and less 17% of the gross amount of said payroll; the 17% added deduction, actually money due and owing to Utilities, was to be taken by Colony to cover payroll taxes, Workmen's Compensation premiums for Utilities' employees and other insurance paid by Colony.

The asserted basis for the method of payment aforesaid was that on highway projects such as the ones in question, in order for a subcontractor to be considered "official", it must be approved by the State and maintain the same records as required for the general contractor; State approved subcontractors are not paid for the work performed until sixty or more days following completion of their work; and it is a common practice to avoid

"such red tape" by adopting the procedures aforesaid with non-approved subcontractors.

The subcontract entered into between Colony and Utilities was because Utilities had expertise in the installation of water pipe which Colony lacked. Colony was primarily a grading contractor, although it was licensed to do utility contracting. Colony was the general contractor to construct the highways which were the subject of projects 306 and 307. Installation of water lines was part of the regular business of Utilities.

The work contemplated in said subcontract began on 18 February 1975. Hunt was the foreman and Britt was a laborer in the work supplied by Utilities for the performance of said contract. Said work crew was the same group of men hired by Utilities in January 1975.

Prior to the time said crew began its work, McNeill told all of the men that during the time they were performing the work involved in the subcontract that they would be employees of Colony. He told Hunt to check with Colony if he needed parts or pipe fittings and that James was the man to speak with. McNeill also required his men to complete new Social Security and W-4 forms. Britt had no prior relationship with Colony.

W. W. Jones was the project manager for projects 306 and 307. James Dowless was Jones' immediate subordinate as supervisor of project 306. Both Jones and Dowless were employees of Colony.

No evidence was presented that Jones or Dowless or anyone else from Colony ever assumed control over the manner in which the work crew performed its work pursuant to the subcontract. To the contrary, the evidence showed that Hunt directed the crew in the performance of its work and that neither Dowless nor Jones ever did so. Nor did Jones or Dowless direct Hunt in the manner in which he performed his work as foreman of his crew. Jones coordinated the work on the project but did not direct the activities of the crew, which was consistent with the fact that Utilities possessed the expertise necessary to perform the subcontract.

The classification and weekly pay rate of the men in the crew, even as to their work done pursuant to the subcontract,

was determined by Utilities. Utilities determined the composition of the crew and only Hunt exercised the power to hire and fire men of said crew. Hunt alone kept the records of the number of hours worked by the crew and although he reported said hours to Jones, it appears that Jones received the information and passed it along to Colony so that the men under Hunt's supervision could be paid.

Although Colony initially paid members of the crew their wages, and held funds belonging to Utilities for the purpose of paying Workmen's Compensation insurance premiums for said employees, in fact Utilities indirectly paid those wages and other items since Colony withheld money owing to Utilities on the unit price of the work performed so as to recoup those expenditures.

During the performance of the work covered by the subcontract, Utilities used said crew, including Britt, on other unrelated projects and maintained separate payrolls for members of the crew. Utilities maintained Workmen's Compensation insurance for all of its employees, including Britt, with Aetna and said carrier had the Workmen's Compensation coverage for employees of Utilities at the time of Britt's injury.

During the time that he was working in the work crew performing said contract, and at the time of his death, Britt was an employee of Utilities and was not an employee of Colony. There was no evidence presented that Britt ever expressly consented to enter into any employment relationship between Utilities and Colony; there was no express appointment or contract of hire entered into between them; and the facts do not show acceptance by Britt of control and direction by Colony's employees over his activities while performing his work under the subcontract so as to warrant a conclusion that he impliedly consented to enter into a new and special employment relationship with Colony.

The wages earned by Britt while in the employ of Utilities include the wages Utilities paid directly and those it paid to him indirectly through Colony. "Thus, under these exceptional conditions it is determined and found as a fact that decedent's average weekly wage at the time of his injury was $89.25."

On 14 April 1975 as Britt, age 24, was working on the Owen Drive Expressway project, an embankment caved in on him causing multiple severe injuries. Hunt uncovered Britt and

transported him to the Cape Fear Valley Hospital in a Utilities van. Although numerous surgical procedures were performed, Britt died on 19 April 1975.

Britt and Deborah Anne Stead were legally married to each other on 5 July 1971 and continued to be married as of the date of Britt's death. Britt's wife was living with him and was dependent upon him for support at the time of his death. On 7 September 1973 Christina Carol Britt was born to said marriage and said child survived her father.

Based upon said findings of fact, Deputy Commissioner Conely made conclusions of law summarized as follows:

At the time of Britt's injury and at the time of his death, he was an employee of Utilities and was not an employee of Colony.

"At the time the decedent was injured his average weekly wage was $89.25. G.S. 97-2(5). By reason of the exceptional circumstances of this case, it would be unfair to the decedent and to his dependents to exclude from the computation of decedent's average weekly wage either the earnings he made on the Utilities payroll or those earned on the Colony payroll, since decedent was an employee only of Utilities, and Utilities ultimately paid the entire amount of the earnings on both payrolls. Such method, therefore, is the closest approximation of decedent's actual earnings as an employee of Utilities. Of course, when an employee who holds two separate jobs is injured in one of them, his compensation is based only upon his average weekly wages earned in the employment producing the injury. *Joyner v. Oil Co.*, 266 N.C. 519, 146 S.E. 2d 447. In the instant case, however, the decedent held only one job and was paid for that job on two separate payrolls. Even those separate payrolls merged into one, however, when Colony recouped its payroll payments to the decedent from Utilities."

The carrier on the risk at the time of Britt's injury was Aetna. Utilities maintained a policy of compensation insurance for all of its employees with Aetna at the time of Britt's injury. Because Britt was an employee of Utilities at the time he was injured, Aetna is determined to be the carrier on the risk and is liable under its policy with Utilities to pay the award here entered.

At the time of Britt's death, Deborah Anne Britt, his widow, and Christina Carol Britt, his child, were wholly dependent upon

him for support and are entitled to receive the entire benefits of the Act for the periods specified in the award. G.S. 97-38; G.S. 97-39.

Based upon the findings of fact and conclusions of law, Deputy Commissioner Conely ordered that Utilities and Aetna pay Britt's widow and child $59.50 per week for a period of four-hundred weeks from 19 April 1975, a total of $23,800, subject to an attorney fee set forth in the award; and that Utilities and Aetna also pay all medical expenses incurred by Britt as a result of his injuries and $500 on his burial expenses.

Defendants Utilities and Aetna appealed to the full Commission. On 21 December 1976 the full Commission entered an order affirming and adopting as its own the opinion and award filed by Deputy Commissioner Conely. On 29 December 1976, the full Commission entered an order making minor amendments to its previous order but reaffirmed and readopted as its own opinion and award filed by Deputy Commissioner Conely.

Defendants Utilities and Aetna appealed.

*Teague, Johnson, Patterson, Dilthey & Clay, by C. Woodrow Teague and George W. Dennis III, attorneys for defendants Cumberland Utilities, Inc. and Aetna Insurance Company.*

*Nance, Collier, Singleton, Kirkman & Herndon, by James R. Nance, Jr., attorneys for plaintiffs.*

*Anderson, Broadfoot & Anderson, by Hal W. Broadfoot, attorneys for defendants Colony Construction Company and Standard Fire Insurance Company.*

BRITT, Judge.

[1] Appellants contend first that the Commission erred in determining that Britt was an employee of Utilities rather than of Colony, and in concluding that a contractor-subcontractor relationship existed between Colony and Utilities. We find no merit in these contentions.

"Upon review of an order of the Industrial Commission, this Court does not weigh the evidence, but may only determine whether there is evidence in the record to support the finding made by the Commission. *Garmon v. Tridair In-*

*dustries,* 14 N.C. App. 574, 188 S.E. 2d 523 (1972). If there is any evidence of substance which directly or by reasonable inference tends to support the findings, the court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary. *Keller v. Wiring Co., supra.* . . ."

*Russell v. Yarns, Inc.,* 18 N.C. App. 249, 252, 196 S.E. 2d 571 (1973).

We hold that the evidence was more than sufficient to support the Commission's finding that Britt was an employee of Utilities at the time of the accident which cost him his life. Among other things, the evidence showed that the work crew including Britt and its foreman, Hunt, was hired by Utilities, that a vehicle owned by Utilities and operated by Hunt transported Britt to and from his work each day, that only Utilities had the right to hire and fire, that Utilities decided where Britt would work each day and each hour of the day, and that Utilities determined the amount of his wages. The evidence further showed that the only supervision Colony exercised over the work crew was to see that their work met the D.O.T. specifications.

We also hold that the Commission did not err in concluding that a contractor-subcontractor relationship existed between Colony and Utilities. A subcontractor has been described as "[o]ne who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance." *Lester v. Houston,* 101 N.C. 605, 611, 8 S.E. 366 (1888). Clearly the relationship between Colony and Utilities met this description. It is true that Colony and Utilities agreed that Britt and other members of the work crew would be "employees" of Colony while working on projects 306 and 307, but their agreement to that designation cannot operate to the prejudice of the members of the crew under the facts in this case. The Commission properly determined that the primary reason for the designation was to circumvent certain requirements of the D.O.T.

[2] Appellants contend next that the Commission erred in determining that Britt's average weekly wage was $89.25, this being the aggregate of his wages received from Colony and Utilities. For the reasons hereinbefore and hereinafter stated, we find no

merit in this contention. Our courts have declared many times that the Workmen's Compensation Act will be liberally construed to effectuate its purpose to provide compensation for injured employees or their dependents, and its benefits should not be denied by a technical, narrow and strict construction. *Stevenson v. Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972); *Hewett v. Garrett*, 274 N.C. 356, 163 S.E. 2d 372 (1968); *Conklin v. Hennis Freight Lines, Inc.*, 27 N.C. App. 260, 218 S.E. 2d 484 (1975).

[3] Appellants contend that defendants Colony and Standard Fire are estopped from denying that the employer-employee relationship existed between Colony and Britt, and that Colony and Standard Fire should pay at least a part of the benefits awarded to plaintiffs. We think this contention has merit.

It is well settled in this jurisdiction that the law of estoppel applies in Workmen's Compensation proceedings as in other cases. *Aldridge v. Motor Co.*, 262 N.C. 248, 136 S.E. 2d 591 (1964); *Ammons v. Sneeden's Sons, Inc.*, 257 N.C. 785, 127 S.E. 2d 575 (1962); *Biddix v. Rex Mills*, 237 N.C. 660, 75 S.E. 2d 777 (1953); *Greene v. Spivey*, 236 N.C. 435, 73 S.E. 2d 488 (1952); *Pearson v. Pearson, Inc.*, 222 N.C. 69, 21 S.E. 2d 879 (1942); *Allred v. Woodyards, Inc.*, 32 N.C. App. 516, 232 S.E. 2d 879 (1977); 8 Strong's N.C. Index 3d, Master and Servant, § 81, page 649.

In *Aldridge v. Motor Co., supra*, the evidence established that the officers of a close corporation owned certain realty, including the building in which the corporate business was carried on; that the officers employed the claimant to keep their several properties in repair, and told the local agent of their insurer that they wanted the employee covered by the corporation's compensation insurance policy; and that, in response to the agency's assurance that this would be accomplished by putting the employee on the corporation's payroll, they did so, so that his remuneration was included in computing the insurance premium. The court held that the insurer was estopped from denying that an injury to such employee while repairing property unconnected with the corporate business was within the coverage of the policy.

In the case at hand the evidence disclosed that Colony and Utilities agreed that when Utilities' work crew, including Britt, was working on projects 306 and 307, members of the crew would be Colony's "employees"; that Colony made deductions from its

payments to Utilities to cover Workmen's Compensation insurance premiums on the wages paid Britt and other members of the crew; and that Colony's carrier, defendant Standard Fire, accepted those premiums.

While the cited cases, establishing or following the principle that the law of estoppel applies in Workmen's Compensation proceedings as in other cases, dealt with claims as between employees and carriers, we perceive no reason why the principle would not apply also to claims as between carriers.

"The doctrine of estoppel springs from equitable principles and the equities in the case." 28 Am. Jur. 2d, Estoppel and Waiver, § 28, page 629. Certainly it would be inequitable in this case to limit Britt's dependents to a recovery of benefits based on the part of his labors performed on Colony projects. In like manner, we think it would be inequitable for Standard Fire to escape all liability after Colony collected premiums for Workmen's Compensation insurance on Britt's wages and Standard Fire accepted those premiums.

We hasten to add that while the Commission found as a fact that Colony made deductions to cover Workmen's Compensation insurance premiums on Britt, it made no finding that those premiums were accepted by Standard Fire although there is evidence to that effect.

For the reasons stated, while holding that the Commission properly determined that Britt was an employee of Utilities and that his dependents are entitled to recover benefits based on his aggregate wages received from Utilities and Colony, we also hold that the Commission should have made a finding as to Standard Fire's acceptance or non-acceptance of Compensation insurance premiums collected by Colony on Britt's wages paid by Colony.

Consequently, this cause is remanded to the Industrial Commission for further findings of fact and determinations. Should the Commission find that said premiums were accepted by Standard Fire, then the Commission will determine the proportion that the wages paid Britt by Colony bears to his total wages for the period of time during which he worked for Utilities and Colony. The Commission will then amend its order to provide that Standard Fire pay its proportionate part of the award.

Farm Lines, Inc. v. McBrayer

The Commission may receive such additional evidence as it deems necessary to make said findings and determinations.

Remanded.

Judges PARKER and VAUGHN concur.