CLAUDIA BARRINGTON AND MELVIN BARRINGTON, PARENTS OF DONALD H. BARRINGTON, DECEASED EMPLOYEE, PLAINTIFFS v. EMPLOYMENT SECURITY COMMISSION AND/OR ECONOMIC IMPROVEMENT COUNCIL, EMPLOYER, UNITED STATES FIRE INSURANCE COMPANY AND/OR SENTRY INSURANCE, A MUTUAL COMPANY, CARRIER, DEFENDANTS

No. 8110IC498

(Filed 2 February 1982)

**1. Estoppel § 4.6; Master and Servant § 81— workers' compensation—insurer's acceptance of premiums—no estoppel to deny employment status**

A workers' compensation insurer's acceptance of premiums from the Employment Security Commission on behalf of a C.E.T.A. worker hired by the Commission and assigned to work for a subcontractor did not estop the insurer from denying that the worker was an employee of the Commission and from

asserting that the subcontractor was the employer of such worker for workers' compensation purposes since there was no evidence that the subcontractor or its compensation insurance carrier altered its position in reliance on the fact that the Commission's insurer accepted premiums on behalf of the worker.

2. **Master and Servant § 49.1— workers' compensation—determination of worker's employer**

The Industrial Commission should have made findings and conclusions as to whether a C.E.T.A. worker hired by the Employment Security Commission and assigned to work for a subcontractor was the employee of the Commission or of the subcontractor at the time of an accident.

APPEAL by defendants Employment Security Commission and United States Fire Insurance Company from the North Carolina Industrial Commission opinion and award of 13 January 1981. Heard in the Court of Appeals 11 January 1982.

The facts are undisputed. In October of 1977, the Employment Security Commission (E.S.C.) entered into a contract with the Economic Improvement Council (E.I.C.) whereby the latter agreed to perform certain services for E.S.C., including operation of a program financed under the Comprehensive Employment and Training Act (C.E.T.A.) of 1973. The contract contained a provision stating that the subcontractor would maintain a workers' compensation policy on its employees. E.I.C. did not do so. For the next three years it was the parties' understanding that E.S.C. would insure all C.E.T.A. participants under its workers' compensation policy.

In the summer of 1978, Donald Barrington was hired by E.S.C. pursuant to the C.E.T.A. program. He was referred to E.I.C. which placed him in the Town of Beach Springs as a playground supervisor. E.S.C. determined Barrington's wages and paid him out of federal funds. E.I.C. was responsible for his daily supervision. Its staff assigned his working hours, trained him, and met with him regularly to discuss problems.

On 15 August 1978, Donald Barrington drowned. All parties have stipulated that his death was the result of an accident arising out of and in the course of employment. Testimony before the Industrial Commission focused on which of the two alleged employers was indeed decedent's employer and therefore obligated to pay the compensation award.

The Deputy Commissioner made the following conclusion of law:

"5. The defendant, ESC and/or its insurance company, U.S. Fire Insurance Company, is estopped to deny workers' compensation protection for the deceased employee. [citations omitted]

Since U.S. Fire Insurance Company accepted payment of premiums for the decedent, it is estopped to deny coverage of workers' compensation protection for the decedent."

He then ordered defendants to pay compensation benefits. The Full Commission affirmed the opinion and award, adopting as its own the Deputy Commissioner's findings of fact and conclusions of law.

*Young, Moore, Henderson and Alvis, by B. T. Henderson II and William F. Lipscomb, for defendant appellants.*

*Johnson, Patterson, Dilthey and Clay, by Richard T. Boyette, for defendant appellees.*

VAUGHN, Judge.

Defendants contend that the Commission erred in applying equitable estoppel and in failing to find that decedent's employer was E.I.C. rather than E.S.C. For reasons discussed herein, we reverse the Commission's order and remand the present record for further findings and conclusions of law.

[1] Defendants first argue that the Industrial Commission erred in concluding that they were estopped from denying the existence of an employment relationship between the decedent and E.S.C. We agree.

It is well established that the doctrine of equitable estoppel may be applied in workers' compensation cases. *Aldridge v. Motor Co.*, 262 N.C. 248, 136 S.E. 2d 591 (1964); *Britt v. Construction Co.*, 35 N.C. App. 23, 240 S.E. 2d 479 (1978). According to *Bourne v. Lay & Co.*, 264 N.C. 33, 37, 140 S.E. 2d 769, 772 (1965), "[i]t is essential to an equitable estoppel that the person asserting the estoppel shall have done or omitted some act or changed his position in reliance upon the representations or conduct of the person sought to be estopped." The person asserting estoppel

must also demonstrate that the reliance caused him detriment. *Thompson v. Soles,* 299 N.C. 484, 487, 263 S.E. 2d 599, 602 (1980).

The typical workers' compensation case in which equitable estoppel has been applied involves one insurance carrier. *See, e.g., Aldridge v. Motor Co., supra; Pearson v. Pearson, Inc.,* 222 N.C. 69, 21 S.E. 2d 879 (1942); *Garrett v. Garrett & Garrett Farms,* 39 N.C. App. 210, 249 S.E. 2d 808 (1978), *cert. denied,* 296 N.C. 736, 254 S.E. 2d 178 (1979). In these cases, the employee (or his employer) has relied on assertions of the insurance carrier that the employer's policy covers the employee. If the insurance carrier is later allowed to assert that the claimant is *not* an insured employee, the claimant will receive no benefits. Courts, therefore, have held that acceptance of premiums based on inclusion of an employee's salary precludes the insurance carrier from later denying the claimant's employee status. *Id.*

In the present action, one insurance carrier is asserting equitable estoppel against another insurance carrier. *Britt v. Construction Co.,* 35 N.C. App. 23, 33, 240 S.E. 2d 479, 485 (1978) held that equitable estoppel applies equally as well to this situation as it does to claims between an employee and a carrier. Between two insurance carriers, however, this Court recently held that acceptance of worker compensation premiums is *not* sufficient to estop the receiving carrier from denying employee status. *Godley v. County of Pitt,* 54 N.C. App. ---, 283 S.E. 2d 430 (1981).

The facts of *Godley v. County of Pitt, supra,* are virtually indistinguishable from the present claim. The injured employee had been hired by Pitt County (County) as a C.E.T.A. worker. He was assigned to the Town of Winterville (Town) which assumed control of his day-to-day supervision. Pursuant to its contract with the federal government, County paid workers' compensation premiums on Godley and all other C.E.T.A. employees. Town did not pay premiums to its carrier on behalf of Godley.

The hearing officer concluded that County and its insurance carrier were estopped from denying that County was Godley's employer because of payment and acceptance of insurance premiums which included Godley's salary. This Court reversed. Stating that detrimental reliance is an essential element of equitable estoppel, the Court failed to find any evidence of such reliance by Town:

"While it is true that the County's insurer accepted premiums on behalf of the plaintiff, there is no evidence in the record to indicate that the Town or its insurer appreciably altered its position in reliance upon this fact. The only reliance asserted by the Town is its own failure to pay insurance premiums specifically on behalf of the plaintiff. We are not persuaded that this omission constitutes detrimental reliance."

54 N.C. App. at ---, 283 S.E. 2d at 432.

In the present case, we also fail to find evidence of detrimental reliance. E.I.C. argues it relied on the parties' understanding that E.S.C. would cover C.E.T.A. workers under its workers' compensation policy. It, therefore, never included the salary of C.E.T.A. workers in premiums to its own carrier. As the Court in *Godley* stated, however, failure to pay premiums does not constitute detrimental reliance. An insurer can recover unpaid premiums if liability is established. *See Williams v. Stone Co.,* 232 N.C. 88, 91, 59 S.E. 2d 193, 195 (1950). We, therefore, sustain appellants' first assignment of error.

[2] Appellants next argue the Commission erred in failing to find that E.I.C. was the employer of the deceased. Having found that E.S.C. was estopped from denying employer status, the Deputy Commissioner never made findings or conclusions as to who in reality was decedent's employer. In light of our foregoing holding, such determinations are now necessary.

*Forgay v. State University,* 1 N.C. App. 320, 161 S.E. 2d 602 (1968) and *Godley v. County of Pitt, supra,* provide guidelines. *Forgay* involved a PACE employee who was hired by N.C. State University and assigned to work for the Town of Madison. As discussed earlier, *Godley* involved a C.E.T.A. worker hired by the County of Pitt and assigned to work for the Town of Winterville.

In neither case was payment of the employee's salary or the right to hire and discharge sufficient to establish a defendant as the employee's employer. The determinative factor was supervisory control. *See Forgay,* 1 N.C. App. at 326, 161 S.E. 2d at 606; *Godley,* 54 N.C. App. at ---, 283 S.E. 2d at 432. Which entity had the power to set work hours, assign duties and establish the manner of performance? Which entity accepted the benefits of the employee's services?

In the present action, the Commission made findings of fact that E.S.C. hired decedent, determined his wages, and had the right to terminate his employment. Finding of Fact No. 10 is that E.I.C. decided where the decedent would work and provided him with day-to-day supervision. Missing, however, is any finding or conclusion of law as to which entity was decedent's employer. The test is "[f]or whom was the plaintiff working as an employee at the time of the accident?" *Suggs v. Truck Lines*, 253 N.C. 148, 155, 116 S.E. 2d 359, 364 (1960).

For the reasons stated, the opinion and award of the Commission is reversed, and the cause is remanded for further findings and conclusions based on the present record.

Reversed and remanded.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.