ROY A. BOWEN, PLAINTIFF v. CRA-MAC CABLE SERVICES, INC., EMPLOYER, LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8110IC1273

(Filed 4 January 1983)

**Master and Servant § 81— workers' compensation—estoppel to deny insurance coverage**

> While the evidence supported the determination by the Industrial Commission that no employer-employee relationship existed between plaintiff cable TV installer and a company insured by defendant at the time plaintiff fell from a ladder while making a cable TV installation, the Commission should have made findings as to whether defendant insurer was estopped to deny workers' compensation insurance coverage for plaintiff where there was evidence tending to show that the owners of the insured company told plaintiff, both before and after the accident, that he and his men were covered by workers' compensation insurance; defendant insurer's nurse went to the hospital and assisted plaintiff in learning how to get from the bed to his wheelchair; an employee of defendant insurer sent the hospital bed, wheelchair and other items to plaintiff's home after his release from the hospital; the payroll given by the insured

company to defendant insurer included some installers; the owners of the insured company intended to purchase workers' compensation coverage for all installers; defendant insurer had paid the claims of other installers who were working as plaintiff did; and after plaintiff's accident, defendant refunded a portion of the premium paid by the insured company because the installers were not covered by the compensation insurance.

APPEAL by plaintiff from the North Carolina Industrial Commission. Opinion and award entered 9 September 1981. Heard in the Court of Appeals 15 September 1982.

Plaintiff was injured when he fell from a ladder while making an installation for cable TV. The hearing examiner denied compensation, concluding that an employer-employee relationship did not exist between plaintiff and Cra-Mac Cable Services, Inc., and the Commission, therefore, had no jurisdiction over plaintiff's claim. The full Commission affirmed the hearing examiner, and plaintiff appeals.

Such facts as are necessary for decision are set out in the opinion.

*Robert M. Elliot for plaintiff appellant.*

*Hutchins, Tyndall, Doughton and Moore, by Richard Tyndall and Richard D. Ramsey, for defendant appellees.*

MORRIS, Chief Judge.[1]

The hearing examiner made the following findings of fact:

1. The defendant, Cra-Mac Cable Services, Inc., is engaged in the business of installing and servicing cable T.V. installations. At one time, such defendant employed hourly-wage employees to do cable T.V. installation work. Such persons worked a specific number of hours per day at an hourly wage. Such persons were kept busy by defendant eight hours per day and were supplied a truck by defendant for making service calls. Defendant had control over such persons, and they were employees of the defendant.

2. Sometime prior to 18 June 1980, defendant abandoned its system of having hourly employees to do the cable T.V. in-

1. The Court's decision in this case was made and written prior to Chief Judge Morris's retirement.

stallation work. Instead, a contract-type method was used. Under such method, defendant would receive various types of orders or contracts from cable T.V. customers. Each morning, persons who did installation and service work for defendant would gather at defendant's office. Such installers would then be given contracts for various types of cable T.V. work. Different types of contracts would have different prices, depending upon the work to be done under the terms of the contract.

3. After receiving the contracts at defendant's office, the installers, including plaintiff, would proceed to drive their trucks to make various calls for installation work. The various jobs were done according to the specifications in the contracts. After a specific contract was done, the installer would inform the defendant that the contract had been completed. In performing the work, the installers were required to follow certain specifications, and if they did not follow the specifications, they would forfeit the price of that particular contract or job.

4. The installers of defendant, including plaintiff, usually owned trucks or motor vehicles to make the various service calls. They used their own ladders and other tools, with the exception of a special type wrench, in the performing of the various contracts. The defendant had no supervision or right of supervision over the installers, with the exception of the fact that the installers were to perform the contracts in accordance with the specifications.

5. The installers, including plaintiff, were engaged in an independent type business, calling or occupation. They had the independent use of their skill, knowledge, or training in the execution of the work, and most of the installers had learned how to perform the job from other installers with whom they had worked. The installers did a specific piece of work at a fixed price. The installers were not subject to discharge because they adopted one method of doing the work rather than another. The installers were free to use such assistants as they thought proper, and some of the installers, in fact, did use helpers or assistants in the performance of the work. The installers had full control over such assistants. The in-

stallers selected their own time for doing the work within the limits that the various contracts would be performed within a reasonable period of time. The only time requirement was that some of the installation work was to be done during certain hours of the day, because the customers would be at their homes during those certain hours of the day.

6. The installers were paid weekly on the basis of the contracts which they had performed during the week in accordance with the contract prices. No Social Security or withholding tax deductions were made from the monies that were paid to the installers. There was a 10-percent holdback of the pay in order that defendant could pay any gas bills which the installers incurred in having gas supplied to their own trucks.

7. The employer-employee relationship did not exist between plaintiff and defendant Cra-Mac Cable Services, Inc. on 18 June 1980 or prior thereto. On such date, plaintiff sustained an accident when he lost his balance and fell off the ladder which he was on in performing a contract.

The evidence supports these findings, and we agree that the findings support the conclusion that there was no employer-employee relationship between plaintiff and Cra-Mac Cable Services, Inc., (Cra-Mac). Indeed both plaintiff and defendant referred to the installers who worked as plaintiff did as "subs."

Plaintiff, however, contends that the principle of estoppel is applicable. While some jurisdictions do not allow the application of the principle in workers' compensation cases (see e.g. dissenting opinion *Nash v. Meguschar*, --- Ind. 227, 89 N.E. 2d 227 (1949) ), our jurisdiction does: " 'The law of estoppel applies in compensation proceedings as in all other cases.' *Biddix v. Rex Mills*, 237 N.C. 660, 665, 75 S.E. 2d 777, 781; *Ammons v. Sneekin's Sons, Inc.*, 257 N.C. 785, 127 S.E. 2d 575. 'That liability for workmen's compensation may be based on estoppel is well established.' *Smith Coal Co. v. Feltner, Ky.*, 260 S.W. 2d 398." *Aldridge v. Motor Co.*, 262 N.C. 248, 251, 136 S.E. 2d 591, 594 (1964). See also *Britt v. Construction Co.*, 35 N.C. App. 23, 240 S.E. 2d 479 (1978); *Allred v. Woodyards, Inc.*, 32 N.C. App. 516, 232 S.E. 2d 879 (1977). And, where estoppel applies, it is not necessary that the Commission find that the relationship of employer-employee

exists. *Garrett v. Garrett and Garrett Farms*, 39 N.C. App. 210, 249 S.E. 2d 808 (1979), *cert. den.* 296 N.C. 736 (1979).

The uncontradicted evidence before the Commission was:

Plaintiff was in business for himself in painting and decorating but, because of the business slump, had to find something else to do. He knew the cable business and, on the recommendation of a former co-worker, called Cra-Mac and talked to Mr. Steve Stone, a supervisor with Cra-Mac. Mr. Stone asked him if he had his equipment, such as truck and ladders. He asked whether the men were covered by insurance, and Mr. Stone replied that they were. Plaintiff had had insurance, but it had lapsed and would never have taken the chance of going to work like that had he known he would not be covered with insurance. Some two weeks after he began to work, "Mr. Stone told us in the meeting room that we were covered by insurance, but not to go out and jump off of a ladder just because we were." After plaintiff's injury, Mr. Stone carried him to the hospital. On the way to the hospital plaintiff said, "Now, Steve, I'm covered for this, aren't I?" He said, "Yes, you are." A nurse from the insurance company came to the hospital and assisted plaintiff in learning how to get from the bed to his wheelchair. A Mrs. Evans, from the insurance company, sent to his home the hospital bed, wheelchair, and everything plaintiff needed in his home after his release from the hospital. Plaintiff's wife testified that when she attempted to give information at the hospital, Mr. Stone told the hospital employee that "this will be covered by the Workmen's Compensation," and he gave the insurance information to the hospital employee. Mr. Craven, an owner of Cra-Mac, assured plaintiff's wife that her husband was covered. He said that the auditors had been to check his books, and he put everything on the table for them to see. He said, "I pay a bill of a high premium for this coverage. Why would I need this coverage if they weren't covered? Because all I have here working is me, Steve and Donna." After the company denied coverage, Mr. Craven told her not to worry, that he had contacted an attorney and would file a suit against Liberty Mutual himself. She talked to Mr. Doug Smith, the insurance agent for Cra-Mac, and he advised her that Cra-Mac did have workmen's compensation insurance.

Mr. Smith testified that he began writing Mr. Craven's insurance in 1977, including Worker's Compensation. "At that time he wanted to include everyone who worked for the company." The payroll he gave Mr. Smith did include some installers. Since then "it has been audited by company auditors." He advised Mr. Craven after the accident that he thought he was covered.

Steve Stone testified that he thought the self-employed installers were covered and told them so. He corroborated the testimony of plaintiff and plaintiff's wife with respect to the information he gave the hospital.

Mr. Gary Craven, part owner and general manager of Cra-Mac, testified that when he procured insurance from Liberty Mutual he intended to purchase coverage for all installers and thought that he had. He made available to the auditors the information for which they asked. He did not know on what they based their premium, but they had been paying claims up until the injury to plaintiff. These were claims submitted by installers working as the plaintiff did. In looking through the files the day of the hearing, he found four such claims which had been paid by Liberty Mutual. In one instance, he personally delivered the checks to the claimant. After plaintiff's claim was denied, he was told by Liberty Mutual that subcontractors were not covered and he should give them only the names of workers from whose wages he would hold taxes. He had thought the subcontractors were covered and had so informed them. He had received a check from the insurance company for premiums paid in 1980. "Since they're not covering the contractors, all they had was Steve, myself, and the secretary. So they refunded me money."

We think the evidence in this case would warrant a finding of fact that would support a conclusion applying the principle of estoppel in this case. However, the hearing examiner failed to find any facts with respect to estoppel with the possible exception of finding of fact No. 8, as follows:

The defendant insurance carrier, in receiving premiums from defendant Cra-Mac Cable Services, Inc., did not include the monies paid the contractors when the audit was made by the defendant insurance company auditors for the purpose of determining the premium to be paid to defendant insurance carrier. Upon the final audit by defendant insurance carrier,

a reimbursement of premiums paid was made to the defendant Cra-Mac Cable Services, Inc.

Our careful review of the record does not disclose evidence to support the first sentence of that finding.

Plaintiff's assignment of error Nos. 2 and 3 are meritorious. Plaintiff made it clear at the hearing that he relied on estoppel if the employer-employee relationship did not exist. For failure of the Commission to make findings of fact with respect to estoppel, the orders of the Commission must be vacated and the matter remanded to the Commission for findings of fact, conclusions of law, and determination based on the record now before it with respect to the question of estoppel.

Orders vacated and cause remanded.

Judges BECTON and JOHNSON concur.