PARKSIDE SENIOR SERVICES, L.L.C., Plaintiff-Appellant, v. NATIONAL DEVELOPMENT AND CONSULTANTS, LTD., Defendant-Appellee.

First District (2nd Division)   No. 1—98—0943

Opinion filed March 23, 1999.

Marc Fogelberg and Elias N. Matsakis, both of McBride, Baker & Coles, of Chicago, for appellant.

Mark C. Fedota and Mark J. Smith, both of Fedota, Childers & Rocca, P.C., of Chicago, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

This appeal stems from a breach of contract claim by plaintiff, Parkside Senior Services, L.L.C. (Parkside), against defendant, National Development & Consultants, Ltd. (National). Both parties filed motions for summary judgment and, on February 20, 1998, the trial court denied Parkside's motion and granted National's motion. On appeal, Parkside contends the trial court erred in granting

National's motion for summary judgment and denying its motion for summary judgment.

BACKGROUND

On April 14, 1995, Parkside and National agreed to jointly develop approximately 215 acres of property in Greensboro, North Carolina (the North Carolina property), for the purpose of developing, marketing and managing a health care complex for senior citizens. The North Carolina property was the subject of a purchase and sales agreement entered into between the seller, Jefferson-Pilot Life Insurance Company (Jefferson-Pilot), and the buyer, Sedgefield Retirement Community, Inc. (Sedgefield), and required Sedgefield to make a down payment of $100,000 to Jefferson-Pilot.

On May 23, 1995, Parkside and National entered into an indemnification agreement wherein they agreed to pay the down payment on behalf of Sedgefield. The down payment was to be placed in escrow with Commonwealth Title Insurance Company. Paragraph 2 of the indemnification agreement provided:

"2. *Parkside Demand Right.* Parkside, within forty (40) days of the execution of the contract to purchase the Real Property between Sedgefield and Jefferson-Pilot, shall have the unilateral right to have National return to Parkside, within five (5) days, Parkside's fifty percent (50%) share of any and all deposits paid to Jefferson-Pilot under the contract to purchase the Real Property. Should Parkside exercise this demand right, the parties shall have no obligations to each other thereafter. This right shall lapse forty (40) days after the date of execution of the aforementioned contract, and after that date, Parkside shall have no right to demand from National its fifty percent (50%) share of any and all deposits paid to Jefferson-Pilot. Notwithstanding the preceding sentence, if Parkside has not received any of its deposit back to date, Parkside shall have the right to receive fifty percent (50%) of any and all deposits that it provided an[d] which are returned to Sedgefield and/or National because of a failure of closing on the purchase of the Real Property requiring Jefferson-Pilot to return any and all deposits received under the Purchase and Sales Agreement."

The agreement further provided that "[n]o change, termination or attempted waiver of any of the provisions of this Agreement shall be binding, unless in writing signed by both parties."

In a letter dated June 19, 1995, Michael S. McCarthy, Parkside's chairman and chief executive officer, advised National that, pursuant to paragraph 2 of the indemnification agreement, Parkside was exercising its right to demand repayment of its $50,000 deposit. No monies were ever remitted to Parkside.

On October 16, 1996, Parkside filed suit in the circuit court of Cook County as a result of National's refusal to pay. Therein, it alleged National breached the indemnification agreement by failing to return to Parkside its $50,000 deposit.

On March 27, 1997, National pleaded the affirmative defense of waiver. It alleged that for at least six months after June 19, 1995, Parkside continued in its efforts to jointly develop the North Carolina property with National. As such, National argued that Parkside waived its right to the return of its deposit.

The parties moved for summary judgment on September 11, 1997, and October 21, 1997, respectively. Attached to and incorporated in National's cross-motion was the affidavit of Flanders O'Neal, a consultant working with National in its efforts with Parkside to develop the North Carolina property. Mr. O'Neal stated that he contacted Mr. McCarthy upon receipt of the June 19, 1995, letter. During their telephone conversation, Mr. McCarthy allegedly told Mr. O'Neal to ignore the June 19, 1995, letter and further assured Mr. O'Neal that the work Parkside was doing on the project would continue.

In response to this affidavit, Parkside filed the affidavit of Mr. McCarthy, attesting that the above-referenced phone call and conversation never took place. Rather, Mr. McCarthy stated that Mr. O'Neal asked Parkside to continue its participation in the project in order to enable National to obtain funds to pay Parkside its $50,000 deposit, as demanded in the June 19, 1995, letter.

On December 12, 1997, after a hearing on the matter, the circuit court denied Parkside's motion and granted National's motion, finding that Parkside had waived its right to repayment under paragraph 2 of the indemnification agreement.

On January 9, 1998, Parkside filed its motion for reconsideration, which was denied by the circuit court on February 20, 1998. Parkside appeals.

We reverse and remand.

ANALYSIS

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). As such, summary judgment is a drastic measure and should be granted only if the movant's right to judgment is free and clear from doubt. *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871. Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204,

1209 (1992). Review in this court from summary judgment rulings is *de novo*. *Outboard*, 154 Ill. 2d at 102, 607 N.E.2d at 1209.

Parkside contends that the circuit court erred as a matter of fact and law when granting National's motion for summary judgment and denying its motion for summary judgment because National failed to prove waiver by estoppel. The parties agree that the indemnification agreement granted Parkside a right to reimbursement of its deposit within 40 days of the execution of the purchase and sales agreement between Sedgefield and Jefferson-Pilot. Parkside timely exercised that right but its deposit was not returned. Although the agreement provided that any waiver must be in writing signed by both parties, no written waiver was ever signed. Notwithstanding, National contends that Parkside's actions in participating in the development of the North Carolina property for at least six months after it requested the return of its deposit constitute waiver by estoppel or promissory estoppel. Parkside, however, argues that no evidence of detrimental reliance by National was shown that supports its waiver by estoppel argument.

Pursuant to the indemnification agreement, the law of North Carolina is controlling. Both Parkside and National rely on *Clement v. Clement*, 230 N.C. 636, 55 S.E.2d 459 (1949). Under North Carolina law, "waiver" is defined as " 'an intentional relinquishment or abandonment of a known right.' " *Clement*, 230 N.C. at 639, 55 S.E.2d at 461, quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023 (1938); see also *Wachovia Bank & Trust Co. v. Rubish*, 306 N.C. 417, 425, 293 S.E.2d 749, 754 (1982).

> "A person sui juris may waive practically any right he has unless forbidden by law or public policy. The term, therefore, covers every conceivable right—those relating to procedure and remedy as well as those connected with the substantial subject of contracts. Sometimes they partake of the nature of estoppel and sometimes of contract. *** No rule of universal application can be devised to determine whether a waiver does or does not need a consideration to support it. It is plain, then, that in the nature and occasion of the particular waiver must lie the answer as to whether or not it requires such consideration." *Clement*, 230 N.C. at 639-40, 55 S.E.2d at 461.

If the waiver is of a formal, as opposed to a substantial, right or privilege, then no consideration is needed to support it. *Wachovia Bank*, 306 N.C. at 426, 293 S.E.2d at 755. North Carolina law holds that mere conduct inconsistent with enforcement of a contract right does not establish waiver by estoppel. There must also be detrimental reliance, with the burden of proof on the party asserting the waiver. *Clement*, 230 N.C. at 640, 558 S.E.2d at 462. If a transaction is benev-

olent in nature, moves down a one-way street and takes nothing of value from the beneficiary, then no detriment is caused to the beneficiary. *Clement*, 230 N.C. at 640, 558 S.E.2d at 461-62.

Here, National contends that Parkside's conduct naturally and justly led it to believe the provisions of the indemnification agreement were waived, as a written contract may be modified or waived by conduct "which naturally and justly leads the other party to believe that the provisions of that contract are modified or waived *** even where the instrument provides for any modification of the contract to be in writing." *Whitehurst v. FCX Fruit & Vegetable Service*, 224 N.C. 628, 636, 32 S.E.2d 34, 39 (1944). However, an agreement to waive a substantial right or privilege, thus altering the terms of the original contract, must be supported by additional consideration or an estoppel must be shown. *Wachovia Bank*, 306 N.C. at 426, 293 S.E.2d at 755.

> "Judge Learned Hand observed, ' "promissory estoppel" is now a recognized species of consideration,' but however atypical in other respects, this kind of estoppel is analogous to the principle on which the more classical or ordinary estoppel is based in that it is required to make it effectual that the promisee in reliance upon the promise has been placed in a changed condition or position where detriment could only be avoided by enforcement of the promise. [Citation.] It must have induced definite and substantial action on the part of the promisee which can only thus be equitably avoided." *Clement*, 230 N.C. at 640, 55 S.E.2d at 461.

See also *Barrington v. Employment Security Comm'n*, 55 N.C. App. 638, 640-41, 286 S.E.2d 576, 578 (1982), quoting *Bourne v. Lay & Co.*, 264 N.C. 33, 37, 140 S.E.2d 769, 772 (1965). Therefore, in order for promissory estoppel to apply, National must also demonstrate that its reliance on Parkside's conduct caused detriment. See *Barrington*, 55 N.C. App. at 641, 286 S.E.2d at 578; *Clement*, 230 N.C. at 640, 55 S.E.2d at 461; *Thompson v. Soles*, 299 N.C. 484, 487, 263 S.E.2d 599, 602 (1980). Whether or not detrimental reliance has occurred is determined according to the specific facts of each case. *Home Electronic Co. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 544, 358 S.E.2d 539, 542 (1987).

■ In our view, the record of correspondence between Mr. Mc-Carthy and other key players in the development of the property, along with the other indicia of participation memorialized in the six months following the June 19, 1995, demand letter and the affidavits of both Mr. O'Neal and Mr. McCarthy, is consistent with National's view that Parkside was seeking to continue its efforts to develop the North Carolina property, as originally contemplated. Even so, we fail to find any evidence of detrimental reliance or change in position ei-

ther in Mr. O'Neal's affidavit or in the other correspondence relied upon by National. National asserts that its detrimental reliance was its continued allocation of time, money and research toward the project when Parkside could have "killed the deal" if it had so chosen. However, while making these assertions, National fails to indicate either what or how much time, money and research National allocated toward the project. National fails to establish that Parkside's forbearance from "killing the deal" was harmful to National.

On the one hand, National's allegation that it continued to allocate time, money and research toward the project after the June 19, 1995, demand letter does not establish the detrimental reliance required for promissory estoppel. As such, the assertions regarding detrimental reliance by National are insufficient to support the summary judgment because of lack of specificity. Other courts have taken similar views in holding that detrimental reliance was not established. See *McCormick v. Camp Pocono Ridge, Inc.*, 781 F. Supp. 328 (M.D. Pa. 1991) (investment of substantial amounts of time and money into improvements on property was not detrimental reliance as plaintiff's actions did not result in the loss of any money); *Castock Corp. v. Bailey*, 128 Misc. 2d 1068, 492 N.Y.S.2d 921 (1985) (change of position not a defense when defendant used money to discharge debt or make expenditures otherwise required); *Securities Settlement Corp. v. Jachera*, 772 F. Supp. 770 (S.D.N.Y. 1991) (if the size of the payment is trivial when contrasted with overall resources, detrimental reliance defense is inadequate); *Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F. Supp. 2d 409 (D.N.J. 1998) (no evidence was presented that plaintiff expended significant resources and interest expenses in reliance on promise that would justify protection of promissory estoppel); *cf. Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir. 1984) (where parties entered into leases and spent valuable time and money in establishing and developing property, benefits obviously flowed to franchisor and promissory estoppel argument was inapplicable).

On the other hand, however, the record does contain correspondence and affidavits that tend to indicate that investments were made in connection with a proposal for developing the North Carolina property. Nevertheless, the record and affidavits do not reflect the extent of the financial investment, if any, by National in its efforts to develop the North Carolina property. Although an expenditure of funds may be insufficient to constitute detriment, the facts of each case must be assessed independently. See *Home Electronic Co.*, 86 N.C. App. at 544, 358 S.E.2d at 542.

Since the record does not indicate the amount, if any, of expenditures and resources made by National, the amount of the loss of any

money by National, or the value of any investment of resources by National after the written demand of June 19, 1995, we reverse and remand for further proceedings. On remand, if the proceedings establish that Parkside's actions after June 19, 1995, resulted in a consequential loss of money and/or resources to National, judgment should be entered for National; otherwise, judgment should be entered for Parkside.

Reversed and remanded.

RAKOWSKI and McNULTY, JJ., concur.