The crux of this matter is whether plaintiff understood on February 8, 2002, that Dr. Dalldorf had released him to return to work without restrictions, and that he was to report to work pursuant to such release. The majority erred in finding that plaintiff was not credible in his assertion that he understood neither Dr. Dalldorf's direction, nor his follow-up conversation with Sharon Glenn, the rehabilitation nurse assigned by defendants, regarding his release to work.
Based on the evidence of record, it is clear that plaintiff had some confusion regarding his release to work. It is undisputed that Dr. Dalldorf released plaintiff to return to work on February 8, 2002. This fact is corroborated by Nurse Glenn's testimony; however, it is not clear from plaintiff's testimony that he understood whether this was to light- or full-duty work, or what his actions were to be pursuant to the release. The majority found that plaintiff, who speaks English as a second language, possessed sufficient language skills to understand both Dr. Dalldorf and Nurse Glenn. However, a review of plaintiff's testimony at the hearing before the Deputy Commissioner reveals that it was not the English language that was a problem for plaintiff; rather, plaintiff had difficulty understanding workers' compensation procedure, specifically, what his action should be pursuant to the release. At that time, plaintiff thought Dr. Dalldorf had released him to light-duty work, and was under the impression that defendant-employer could not offer him such work. Plaintiff conversed with Nurse Glenn to try to understand what he should do. Regarding that conversation, which took place at Dr. Dalldorf's office on February 8, 2002, plaintiff testified:
 A. She [Glenn] say she's going to contact the employer and she's going to let me know. Somebody's going to call me. Either Human Resources if they can still have the job and the doctor say well, that is your job, you contact the employer, you explain the situation, anyway I go and send a report. And then when I find out everything happen I say, `How this one happen.' [sic]
 Q. Okay. So Ms. Glenn told you she would contact the employer?
 A. Either Amy or the nurse. Somebody's going to contact me and tell me if I got a light duty work, and I can come back to work. [sic]
It is clear from this referenced conversation that plaintiff did not understand that he was to report to work without restrictions. It is well settled that the Workers' Compensation Act is to be construed liberally and in favor of the injured employee, and its benefits are not to be denied upon technical, narrow, or strict interpretation of its provisions. See Matthews v. Charlotte-Mecklenburg Hosp. Authority,510 S.E.2d 388 (1999); Dayal v. Provident Life and Acc. Ins. Co.,321 S.E.2d 452 (1984); and Britt v. Colony Const. Co., 240 S.E.2d 479
(1978). The majority should have given greater weight to plaintiff's assertion that he did not understand what his actions were to be pursuant to Dr. Dalldorf's release.
Defendants argued, and the majority so found, that plaintiff was rightfully terminated when he failed to report to work pursuant to the February 8, 2004, release by Dr. Dalldorf. Additionally, defendants argued that Nurse Glenn, the rehabilitation nurse assigned by defendants, had no duty under the rules governing rehabilitation professionals that required Ms. Glenn to take any additional action in the matter. On the contrary, Rule VI-H of the N.C. Industrial Commission Rules for Utilization of Rehabililitation Professionals provides in pertinent part:
 Frequency and timing of periodic reports will be determined at the time of referral and will depend upon the type of service provided. However, prompt communication of significant activity to all parties by telephone, telecopier, electronic media, or letter should occur when information pertinent to the rehabilitation process is obtained, when changes or revisions are recommended or occur in medical or vocational treatment plans, or on any other occasion when the workers's understanding and cooperation is important to the implementation of the rehabilitation plan (emphasis added). Id.
The evidence of record shows that Ms. Glenn did not notify plaintiff's counsel of Dr. Dalldorf's release until her case report dated February 28, 2002, twenty days after the release. However, defendants obviously received notice of the release prior to the report, as plaintiff was officially terminated on February 26, 2002. A significant change in plaintiff's condition, such as a release to return to work without restrictions, should have been promptly reported to all parties by Nurse Glenn, the rehabilitation nurse, pursuant to the above Rule. This omission would have put plaintiff's counsel on immediate notice of the release, and could have prevented plaintiff from loosing his job due to his misunderstanding of the release.
The majority erred in finding plaintiff was not credible when testifying as to his misunderstanding of Dr. Dalldorf's instruction regarding his release to return to work. It is clear from plaintiff's testimony that despite Dr. Dalldorf's instruction, and a follow-up conversation with the rehabilitation nurse, plaintiff was confused as to what his action should be pursuant to the release. The rehabilitation nurse did not promptly inform all parties of the change in plaintiff's condition, which contributed to plaintiff's termination. Thus, plaintiff should continue to receive indemnity compensation and vocational rehabilitation until plaintiff has made a successful return to work. For these reasons, I respectfully dissent.
This 16th day of February 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER