B. F. CHEATHAM, Administrator of JOHN A. CHEATHAM
v. WM. A. BOBBITT.

*The Code, Section 590—"Opening the Door" by Personal Representative of Decedent—Personal Transaction Defined.*

1. The term "personal transaction" as used in *The Code*, Section 590, was intended to describe the whole of the negotiation or treaty between the original parties to it out of which the cause of action arose.

2. When a personal representative "opens the door" by testifying to a transaction, &c., it is not his province, but that of the court, to decide what testimony of the adverse party may come in.

3. In an action by an administrator for the price of goods alleged to have been sold and delivered by his intestate to defendant, the plaintiff may testify to the delivery of the goods to defendant and not thereby "open the door," because the delivery is an independent fact.    But, a *purchase* being the result of negotiations between the parties, if plaintiff testify that defendant *purchased* the goods from his intestate he thereby makes it competent for defendant to testify to conversations and transactions between himself and plaintiff's intestate which negative a sale and purchase, but tend to establish a bailment with intent to defraud the creditors of the alleged vendor.

CHEATHAM v. BOBBITT.

CIVIL ACTION, tried before *Greene, J.*, and a jury, at January Term, 1895, of GRANVILLE Superior Court.

Plaintiff complained for goods sold and delivered to defendant in 1879 and 1882. Defendant denied purchasing the goods and alleged they were delivered to him by plaintiff's intestate, who was in failing circumstances, in order to avoid the payment of his debts. Defendant also pleaded statute of limitations. .

B. F. Cheatham, plaintiff, was introduced as a witness in his own behalf, and testified that he was administrator and brother of John A. Cheatham, deceased, that John A. Cheatham was unmarried and died after his father and mother, and that witness was one of his heirs-at-law. The intestate was merchandising in the city of Raleigh in the year 1878. *That defendant purchased goods and merchandise from intestate.* That he knows of his own knowledge that his brother had delivered these goods to defendant, and that he had seen many of them delivered. That witness was not in employ of his brother, but was often in and about the st re, and at his brother's request delivered a portion of the goods to defendant. Witness was here shown several bills of goods, and after objection on part of defendant, testified that two of them were in his handwriting and all others in the handwriting of his brother. That they were the originals of the bills of goods delivered to defendant by his brother and himself. That he delivered the goods to defendant's wagoner at the request of his brother, the intestate. Plaintiff also introduced letters of defendant, which, after objection by defendant, witness testified were in handwriting of defendant, and were received by the intestate, all ordering goods from intestate and were signed by defendant.

Plaintiff then rested.

Wm. A. Bobbitt, the defendant, then testified in his own

behalf that the goods were delivered to him by John A. Cheatham under an agreement. Plaintiff objected to any testimony as to an agreement between the witness and the intestate, and his Honor instructed the witness to confine himself to the transactions between himself and deceased about which the plaintiff had testified. Plaintiff excepted.

Witness then said, that in the latter part of October or November, 1879, John A. Cheatham approached him in Raleigh, and told him he was bound to fail and intended to buy a large stock of goods and then make an assignment. That he wanted him (the defendant) to let him ship a lot of the goods out to his-store in Brassfield township, Granville county, so as to get them out of the reach of his creditors, and that after the assignment he (Cheatham) would come out there and dispose of them. That all of the goods sued for were delivered under the agreement between the 27th of November and 17th of December, and that these were the goods about which the plaintiff administrator had testified. That he would send his wagon so as to reach Raleigh about dark and have it loaded during the night and start off before day. That John A. Cheatham failed just before Christmas, 1879. That defendant himself left home early in 1880. That the goods remained at the store of R. Bobbitt & Son. Some of them were sold, some scattered and some remained there for several years. That all the goods described in the bills produced by plaintiff and in plaintiff's testimony were delivered in consequence of that agreement between John A. Cheatham and the witness.

Plaintiff again objected to any evidence of conversation or transactions whatever between defendant and intestate of plaintiff.

His Honor again ruled that no testimony should be

admitted except that relating to the transactions about which the plaintiff administrator had testified. Plaintiff excepted.

On cross-examination, witness testified that the conversation between the witness and plaintiff's intestate took place in a room at the Yarborough House. That no one was present except himself and John A. Cheatham, and that the goods were delivered in accordance with the agreement then entered into.

His Honor submitted the following issues:

" 1. Did the cause of action of plaintiff against the defendant accrue more than three years prior to the beginning of this action ? Answer—' No.'

" 2. Were the goods described in the plaintiff's complaint delivered to defendant in consequence of an agreement between plaintiff and defendant that defendant shou'd assist plaintiff in avoiding the payment of his debts ? Answer—'' Yes.' "

There was a verdict for defendant on the second issue.

Rule for new trial. Rule discharged. Judgment for defendant. Exception by plaintiff.

The plaintiff, B. F. Cheatham, Adm'r, died since the last Term, and S. V. Ellis, Administrator *d. b. n.,* was made party plaintiff.

*Messrs A. J. Field* and *J. B. Batchelor,* for plaintiff.
*Messrs. Graham & Graham,* for defendant.

AVERY, J.: The word " transaction " is used in the statute in reference to the joinder of actions (*Code,* Sec. 267) in the sense of the conduct or finishing up of an affair, which constitutes as a whole the " subject of action ". So the term " personal transaction," in its application to a case like the one at bar, was intended to describe the whole of the negotiation or treaty between the original

parties to it, out of which the cause of action arose. The plaintiff would have steered clear of opening the door to his adversary had he gone no further than to testify to the delivery of the goods described in the bills to the defendant, because that was an independent fact, involving no account of either a personal communication or transaction between his intestate and the defendant.* *Johnson* v *Rich*, at this Term. But he started out by stating that the defendant " purchased goods and merchandise " from his intestate while the latter was merchandising in Raleigh, and proceeded to testify to the delivery of the articles so purchased, and that the bills offered in evidence were " the originals of the bills of goods delivered to the defendant by his brother and himself." To purchase is to " obtain or secure, as one's own, by paying or promising to pay a price ", (Standard Dictionary,) and the question whether there was such an absolute sale by his intestate, and a purchase by the defendant, as must have been inferred from plaintiff's testimony if believed, or whether the delivery was by the terms of the treaty to vest in the defendant, in whose custody the goods were placed, only a qualified property as bailee, as defendant testified, depended upon the finding by the jury of the facts constituting the history of the whole negotiation between the parties. The plaintiff testified that the defendant " purchased " the goods delivered to him, as the result of all of the latter's chaffering and treating with his intestate. The defendant was allowed to testify that, taking the whole transaction in reference to the goods together, they were delivered to him as a bailee to assist in carrying out a certain fraudulent understanding. The plaintiff, after opening the door to contradiction by testifying that there was a purchaser, cannot close it against his adversary by claiming that he testified to a completed

transaction, when his adversary's defense rests upon the idea that the agreement was made at a time and place anterior to the delivery witnessed by the plaintiff, and was the most important part of the whole transaction from the beginning to the end of the negotiation, which terminated with the delivery. It was the plaintiff's own folly, if, by testifying that the whole transaction was in contemplation of law a purchase, he made competent testimony, to which he would otherwise have had good ground for objecting. The statute was passed for the purpose of protecting the estates of dead men by inhibiting living persons from proving claims against their heirs or representatives upon testimony as to personal transactions or communications with such decedents. It would be dangerous to remove a barrier which prevents unscrupulous men from indulging ther cupidity by resorting to perjury, when the only person who could have contradicted them is dead. But it was not intended that the personal representative should testify to the declarations of the decedent, or as to a part of a transaction between him and a living person, which if believed would tend to fasten a liability on such living person, and then insist upon closing the mouth of the latter from explaining the whole transaction in such way as to rebut the *prima facie* case made against him. When the personal representative leaves the door open, it is not his province but that of the court to decide what may come in. So much of the transaction as was described in detail by the plaintiff was consistent with his summing up of the whole and declaring it a purchase. But, looked at in the light of the covinous agreement which defendant testified had been made, the billing and delivery of the goods were equally consistent with the defendant's contention as to the facts. There was no error in the ruling complained of and the judgment must be affirmed.          Affirmed.