R. E. HERRING v. H. B. IPOCK AND J. A. VINSON.

(Filed 19 March, 1924.)

**1. Partnership—Evidence—Deceased Persons—Statutes.**

Where the liability of the defendant depends upon whether he was a partner in a firm at the time a debt was contracted by defendant firm, the fact at issue may be proved by the plaintiff either by direct or circumstantial evidence.

**2. Same—Interest—Transactions and Communications.**

Where defendant's liability depends upon whether he was a member of defendant partnership at the time the firm contracted a debt with the plaintiff, the subject of the action, who has since died and his administrator has been made a party to the action, a witness who was not a member of the firm is not such person interested in the result as would exclude his direct testimony, under the provisions of C. S., 1795, as to the payment to his own knowledge by deceased of the partnership debts.

**3. Same—Questions for Jury—Trials.**

Where the deceased defendant is sought in an action to be held liable as a partner of a firm, for the debts of the firm, a lumber manufacturing concern, and there is evidence tending to show he had frequently paid its debts in the course of its operation, a disinterested witness may testify that the firm would dress his lumber as a partner, and whereas to a single transaction he has stated that he thought certain of his lumber was thus dressed, it leaves the weight and credibility of his evidence thereon to the jury.

**4. Same—Opening the Door for Defendant's Evidence.**

Where the defendant executor has testified as to certain matters relating to the identification of certain letters the deceased had written upon the question of whether he should be held liable as a partner for the debts of a firm, it is competent for the plaintiff's witness to testify

in plaintiff's behalf, as to other matters relating thereto and tending to fix the deceased with liability as a partner, under the principle that when the defendant has himself "opened the door by his own evidence" the plaintiff may testify as to the completed transaction, and C. S., 1795, prohibiting testimony as to transactions, etc., with a deceased person, does not apply.

THIS was a civil action tried before *Grady, J.*, at October Term, 1923, of SAMPSON. Appeal by J. T. Vinson, executor of J. A. Vinson, deceased, defendant.

The plaintiff sued H. B. Ipock and J. A. Vinson, alleging that they composed the firm of the H. B. Ipock Company, for the sum of $1,165, on an open unsecured account for pine lumber. The defendant H. B. Ipock filed no answer but the defendant J. A. Vinson did file answer, denying that he was a member of the H. B. Ipock Company and also denying that he had any part in the purchase of said lumber, and was in nowise responsible for said indebtedness. During the pendency of the action J. A. Vinson died, and at the time of the trial his executor, J. T. Vinson, was duly made a party to the suit, and filed answer denying the plaintiff's claims.

The following issues were submitted to the jury, and their answers to same:

"1. At the time of the sale of the lumber from R. E. Herring to H. B. Ipock Co., was J. A. Vinson a member of said firm and a co-partner with Ipock? Answer: Yes.

"2. In what amount is H. B. Ipock Co. indebted to plaintiff? Answer: $1,165 and interest."

Judgment was rendered for plaintiff against defendants. J. T. Vinson, executor of J. A. Vinson, deceased, assigned errors and appealed to this Court. The exceptions and assignments of error will be considered in the opinion.

*Fowler, Crumpler & Butler, and Faircloth & Fisher for plaintiff.*

*Butler & Herring, Jas. H. Pou, and J. R. Williams for defendant Vinson.*

CLARKSON, J. The first assignment of error is to the court below permitting the witness G. A. Waller to answer the following question in the following manner:

"Q. Did you, during the time that you were connected with the H. B. Ipock Company, did you and Mr. Ipock or Mr. Ipock in your presence ever draw any draft upon Mr. J. A. Vinson with which to meet your pay roll or to pay for hay or anything or other items connected with the business down here? Answer: I think so. I think he made all drafts on Mr. Vinson for expense accounts."

The controversy in this case is the *sole fact,* was J. A. Vinson a partner in the firm of H. B. Ipock Company. This fact can be proved by direct or circumstantial evidence. J. A. Vinson is dead and J. T. Vinson is the executor of his estate.

C. S., 1795, is as follows: "Upon the trial of an action, or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through, or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator or survivor of a deceased person, or the committee of a lunatic, or a person deriving his title or interest from, through, or under a deceased person or lunatic, by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person or lunatic, except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf, or the testimony of the lunatic or deceased person is given in evidence concerning the same transaction or communication."

Exclusion does not apply when witness has no interest in the result of the action. The interest which disqualifies one from testifying under C. S., 1795, *supra,* is a direct, legal or pecuniary interest in the event of the action. *Helsabeck v. Doub,* 167 N. C., 205; *In re Gorham,* 177 N. C., 275.

The witness Waller was not "interested in the event." He said, "I was not a member of the H. B. Ipock Company." His testimony was competent.

The next objection was to the question, "It asks for the contents of a draft which was in writing, and the draft itself was not produced or its absence accounted for." The drafts about which Waller was speaking, the question as asked, "In your presence ever draw any draft?" the answer was, "I think so," etc. The answer seems to imply knowledge, and its uncertainty could not be prejudicial. It was collateral to the issue and competent.

*Davis, J.,* said, in *S. v. Ferguson,* 107 N. C., 846: "There are numerous exceptions to the general rule which requires the production of a written instrument as the best and usually only evidence of its contents. Does the note in question fall within any of the exceptions? The note contains no agreement required to be in writing; its contents were purely collateral to the issue, and, as was said by the present *Chief Justice* (Merrimon) in the case of *S. v. Credle,* 91 N. C., 648: 'It was not intended to be preserved, but to serve a temporary purpose and disappear. . . . It was a loose, casual paper, and what it con-

tained might be proved like any other fact or event. The rule that a written instrument cannot be contradicted, modified or added to by parol proof has no application to it. It was competent to speak of it and what it contained, without producing it or showing that it was destroyed or lost.' We do not think that the note in question comes within the general rule excluding parol evidence of the contents of written instruments, and the evidence should have been admitted. *S. v. Credle, supra; S. v. Wilkerson,* 98 N. C., 696; 1 Greenleaf Ev., sec. 89, and cases cited." See *Ledford v. Emerson,* 138 N. C., 502; *Andrews v. Grimes,* 148 N. C., 437; *Rabon v. R. R.,* 149 N. C., 59.

The next assignment of error was that the court below was in error in permitting the witness C. W. Petty to testify as follows:

"Q. What lumber was he speaking of at that time (referring to lumber which the witness had stated that J. A. Vinson had him to dress)? A. I suppose it was his own lumber."

We think this evidence competent. The witness Petty had just previously testified that he had dressed all the lumber for the H. B. Ipock Lumber Company, and that J. A. Vinson would come down occasionally and go over the lumber yard and inquire how the H. B. Ipock Lumber Company was getting along, and questions like that. The question and answer, about which the defendant complained, shows the witness' best impression as to the ownership of the lumber of which Vinson was speaking at the time, and from the previous testimony of the witness it would seem that the impression was well founded, and might have been testified to by the witness as a positive fact.

The last assignments of error were to the testimony of the defendant H. B. Ipock, as follows:

"Q. Were you returning his money at 6 per cent interest? Answer: Yes, sir.

"Q. Well, was he to share in the profits that the business might make over and above that interest? Answer: Yes.

"Q. What part of the profits was he to get over and above the 6 per cent, and what part of this profits were you to get out of this business down here? Answer: Fifty per cent.

"Q. State whether he said anything to you about not wanting his name used in the business down here, about not wanting his name known in same. Answer: Well, when I decided that I wanted to go into this business I took the matter up with Mr. Vinson as to buying out Vinson, Jones & Finch lumber business, and before I did that we talked it over with regard to buying it out. We went to the banks down here."

It will be noted that the witness H. B. Ipock was offered by the plaintiff for the purpose of identifying letters obtained from the Ipock-

HERRING *v.* IPOCK.

Vinson file, which identification was made without objection; was, on cross-examination, asked by the attorney for J. T. Vinson, executor of J. A. Vinson, deceased, to explain various and sundry transactions between him and J. A. Vinson relative to the manner in which the H. B. Ipock Company was conducted, and how and from whom the money was obtained for the conduct of the said business. Whereupon the witness proceeded at some length, detailing his financial connections with J. A. Vinson. Upon cross-examination the witness had been asked from whom did he obtain the money to conduct the H. B. Ipock Lumber Company, and how much had he thus obtained, and upon redirect examination he was asked upon what terms and conditions did he obtain it.

The defendant J. T. Vinson, executor of J. A. Vinson, contends that this evidence was incompetent; that the defendant Ipock was testifying in his own interest and against him as executor of J. A. Vinson, deceased, the defendant in this action, as to a "personal transaction" between them, which is not permitted by the statute, C. S., 1795, *supra.*

The plaintiff, on the other hand, contends that although J. A. Vinson is dead, that J. T. Vinson is his executor, representing the estate. That when a personal representative "opens the door" by testifying to a transaction, etc., it is not in his province, but that of the court, to decide what testimony favorable to the adverse party may "come in."

From a careful review of the authorities, we think the plaintiff's contention correct, and the court below made no error in permitting the testimony. *Cheatham v. Bobbitt,* 118 N. C., 343; *Sumner v. Candler,* 92 N. C., 635; *Hawkins v. Carpenter,* 85 N. C., 482; *Pope v. Pope,* 176 N. C., 287.

In the *Cheatham case, supra,* the suit was brought by B. F. Cheatham, administrator of Jno. A. Cheatham, against Wm. A. Bobbitt. The plaintiff, B. F. Cheatham, administrator, was a witness and testified that the defendant, Wm. A. Bobbitt, *"purchased goods and merchandise"* from Jno. A. Cheatham, plaintiff's intestate. The defendant, Wm. A. Bobbitt, was allowed to testify as to the whole transaction and the agreement between them in reference to the purchase of the goods and merchandise. The plaintiff having "opened the door," the defendant was allowed to "walk in." But it must be in the "same door," transaction or communication on which the witness had testified.

From a careful review of the record we can find

No error.