LENOIR MEMORIAL HOSPITAL INCORPORATED v. WILLIAM EARL STANCIL AND GUARANTY SECURITY INSURANCE COMPANY, A CORPORATION.

(Filed 29 January, 1965.)

**1. Insurance § 64—**

Pursuant to its liability policy obligating it to pay medical expenses to or for the person injured, insurer issued its check for hospital expenses payable jointly to the injured party and the hospital. The drawee bank cashed the check upon endorsement of the injured party alone and the injured party failed to pay the hospital. *Held:* There was no contractual relation between insurer and the hospital, and under the terms of the policy insurer's liability was discharged by the payment to the injured party.

**2. Waiver § 2—**

Waiver is the intentional surrender of a known right or privilege and, as distinguished from estoppel, does not require misleading and does require consideration unless the waiver involves merely a formal right or privilege.

**3. Estoppel § 4—**

    An estoppel always involves a prejudicial misleading.

**4. Same;   Waiver § 2—**

    Insurer, pursuant to its liability policy, issued its check payable jointly to the injured party and the hospital. The drawee bank paid the check with the sole endorsement of the injured party. *Held:* The fact that the insurer made its check jointly payable does not render insurer liable to the hospital upon the theory either of waiver or of estoppel, there being no consideration to support a waiver, and the hospital not having been misled to its prejudice, the latter constituting an essential element of estoppel.

APPEAL by defendant Guaranty Security Insurance Company from *Fountain, J.,* April 1964 Session of LENOIR.

Plaintiff instituted this action to recover the sum of $741.71 for hospital services rendered defendant Stancil. The case was tried as a small-claims action by the judge without a jury. The material facts are not in dispute.

Defendant Stancil sustained certain personal injuries on January 14, 1961, while riding as a passenger in an automobile operated by M. B. Randolph, to whom defendant Guaranty Security Insurance Company (Insurer) had issued a policy of automobile liability insurance containing a medical-payments clause. Stancil was a patient in plaintiff's hospital for eleven days and thereby became indebted to plaintiff in the sum of $741.71.

Under Part II, Coverage C, of its policy (Medical Payments), as applicable to this case, Insurer agreed to pay *to or for any person,* who sustained bodily injury caused by accident while occupying the Randolph automobile when it was being used by the named insured, all reasonable hospital bills incurred within one year from the date of the accident. With reference to these payments, the policy provides:

    "As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require.

    "The company may pay the injured person or any person or organization rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company."

On July 17, 1961, Insurer issued its draft in the amount of $741.71 payable to both plaintiff hospital and defendant Stancil. Insurer mailed the draft to Stancil, who was then in prison. Stancil endorsed and deposited it without plaintiff's endorsement. Printed on the back of the draft was this notation: "This draft must be endorsed by all payees and exactly as drawn. This draft constitutes settlement in full of the claim or account described on the face hereof and the payees by endorsement below accept it as such"; notwithstanding, First National Bank of Minneapolis, Minnesota, Insurer's drawee, paid the draft. Stancil ultimately received the proceeds; and, immediately upon his release from prison, he spent them without paying plaintiff for the hospital services it had rendered him. Plaintiff never saw the draft and had no opportunity to endorse it. The only dealings which the adjuster representing Insurer ever had with plaintiff were by mail. He had written plaintiff to request its bill, which it sent.

When Insurer refused to pay Stancil's bill, plaintiff instituted this action. Upon the trial the judge found facts substantially as stated above, overruled Insurer's motion for nonsuit, and entered judgment for plaintiff in the amount of $741.71 against both Stancil and Insurer with judgment over against Stancil in favor of Insurer. Insurer appeals, assigning as error the failure of the court to sustain its motion for nonsuit.

*White & Aycock for plaintiff.*

*Whitaker, Jeffress & Morris for Guaranty Security Insurance Company, a corporation, defendant.*

SHARP, J. The terms of the policy which obligated Insurer to pay Stancil's medical bill involved in this case gave Insurer the option to pay the amount of this bill *to or for Stancil*. Upon this point the policy is positive and unambiguous. Insurer has paid Stancil. Therefore, for plaintiff to impose liability upon Insurer, it must show either a contractual obligation or conduct on Insurer's part giving rise to an estoppel or a waiver. Stancil, as the injured party, not plaintiff, is the third person for whose direct benefit Insurer and Randolph entered into the medical-payments provision of the insurance contract. Annot., Coverage, construction, and effect of medical payments and funeral expense clauses of liability policy, 42 A.L.R. 2d 983. Any benefit which plaintiff might have received under it would have been incidental. The amount of plaintiff's demand being within the limits of the medical-payments coverage of the liability policy, Insurer was, under its terms, obligated to pay that amount to or for *Stancil*.

No contractual relation ever existed between plaintiff and Insurer. Plaintiff did not render its services to Stancil upon any promise of Insurer to pay it for the services. So far as the record discloses, plaintiff had no knowledge of Insurer's obligation to Stancil until Insurer's adjuster requested information as to the amount of Stancil's bill with plaintiff. In placing plaintiff's name on the draft, Insurer made to plaintiff a unilateral concession completely without consideration. Even if Insurer had promised to make plaintiff the payee at the time it requested the bill, the promise would have been *nudum pactum*, there being no antecedent obligation on Insurer's part. 12 Am. Jur., *Contracts*, § 98 (1938). Absent any element of estoppel, the promise would have been unenforceable.

There was no estoppel. Insurer did not induce plaintiff to alter its position by any misleading act or promise. When Insurer's adjuster requested information from plaintiff as to Stancil's bill, the adjuster did nothing to lull plaintiff into indiligence in perfecting its lien under G.S. 44-50 upon any money Insurer might pay Stancil. He made no representation as to whom Insurer would name payee in the draft.

If Insurer had sent the draft to Stancil made payable to him only, clearly his collection of the proceeds would have discharged Insurer's obligation under the policy, and we take it that plaintiff would not contend otherwise. Plaintiff does contend, however, that by making both plaintiff and Stancil payees, Insured waived its privilege to pay either Stancil or plaintiff and thus became liable to plaintiff, also, when Stancil collected the draft without its endorsement and failed to pay plaintiff's bill. It is, of course, unfortunate that Stancil did not use the money to clear the moral and legal obligation for which it was provided. Nevertheless, we cannot hold that Insurer, merely by issuing its draft to both Stancil and plaintiff in the amount of plaintiff's bill to Stancil, converted its liability to Stancil alone into a liability to plaintiff, also. It goes without saying that Insurer would never intentionally have relinquished the privilege to acquit its liability under the policy by paying one of the two *permissible* payees.

Though often used interchangeably with reference to insurance contracts, the terms *waiver* and *estoppel* are not synonymous. Waiver is the intentional surrender of a known right or privilege, which surrender modifies other existing rights or privileges or varies the terms of a contract. It does not necessarily imply that the one against whom it is sought to be invoked has misled the other to his prejudice, whereas estoppel always involves a prejudicial misleading. 56 Am. Jur., *Waiver* § 3 (1947). Sometimes a waiver partakes of the nature of an estoppel and sometimes of contract. Where the facts relied upon to establish an estoppel fail to do so for lack of essential elements, they will also

fail to establish the valid waiver of a substantial right or privilege unless the waiver is supported by a consideration. *Clement v. Clement*, 230 N.C. 636, 55 S.E. 2d 459. Although there may be a valid waiver of a formal, as distinguished from a substantial, right or privilege without a consideration, to waive the latter the same consideration is required as for any other contract. *Doerr v. National F. Ins. Co.*, 315 Mo. 266, 285 S.W. 961, 54 A.L.R. 1336. There being no estoppel here, a valid waiver required consideration, which was lacking. The case comes down to this: By acquiescing in its drawee's payment of the draft in question, Insurer simply exercised its privilege, which it had not waived, to pay the injured person, Stancil.

This case, although relatively uncomplicated, would have been entirely so had either plaintiff-payee or Insurer-drawer, or had both of them, sued First National Bank of Minneapolis, the drawee, whose oversight thwarted Insurer's obvious purpose to see plaintiff paid. G.S. 25-47; *Bank v. Bank*, 197 N.C. 526, 150 S.E. 34; *Dawson v. Bank*, 197 N.C. 499, 150 S.E. 38; *accord, American National Bank v. First National Bank*, 130 Colo. 557, 277 P. 2d 951; *United States Fidel. & G. Co. v. Peoples National Bank*, 24 Ill. App. 2d 275, 164 N.E. 2d 497; Annot., Payment of check upon forged or unauthorized indorsement as affecting the right of true owner against the bank, 14 A.L.R. 764, 69 A.L.R. 1076, 137 A.L.R. 874, as supplemented. Unhappily, however, our case is not so constituted.

Insurer's motion for nonsuit should have been allowed.

Reversed.