WACHOVIA BANK & TRUST COMPANY, N.A., EXECUTOR AND TRUSTEE UNDER THE WILL OF WILLIAM ELMO BAKER v. MIKE RUBISH

No. 54A81

(Filed 3 August 1982)

1. **Estoppel § 4.7— failure to give written notice of intent to extend option on lease—insufficient evidence of equitable estoppel—theory of promissory estoppel for jury**

In an action stemming from a 1960 lease of undeveloped land which was entered into by defendant and the deceased for whom plaintiff bank is executor of his estate, the trial court erred in submitting the theory of equitable estoppel as an issue for the jury's consideration in determining whether defendant properly exercised an option to extend the lease. However, there was evidence from which the jury could find that the bank was estopped to demand written notice, as provided for under the terms of the lease, upon the theory of promissory estoppel since there was evidence from which the jury could find that deceased had waived two breaches of the condition of written notice, and defendant had relied on the promise implied from these waivers that no written notice would thereafter be required.

2. **Evidence § 11.8— Dead Man's Act—stipulations—waiver by plaintiff of right to rely upon**

In an action stemming from a lease entered into between defendant and deceased for whom plaintiff is executor of his estate, the Dead Man's Act, G.S. 8-51, would have precluded defendant from testifying on "personal transaction[s]" he had with deceased unless plaintiff first "opened the door" by offering evidence about a particular transaction. Plaintiff did "open the door" when it, as deceased's personal representative, joined in a stipulation stating: "The lease was extended for two (2) additional terms of five (5) years each by the defendant, Mike Rubish, by giving notice to the parties of the first part."

Due to this stipulation, defendant should have been allowed to testify to the sort of notice—oral or written—which deceased had accepted from him in order to exercise an option to extend the lease in the past.

3. Frauds, Statute of § 1— exclusion of testimony improper

In an action stemming from a lease for an initial period of ten years but with options to extend that period for six additional five-year periods, the trial court erred in excluding the testimony of several witnesses that the owner of the property had said defendant had a "40-year lease" on the ground that it was barred by the statute of frauds since the statements, standing alone, do not show a modification of the existing lease based on an exchange of new consideration between the maker of the statements and the defendant.

Justices MITCHELL and MARTIN took no part in the consideration or decision of this case.

PLAINTIFF'S action for summary ejectment and damages resulted in a jury verdict for defendant at the 7 January 1980 Civil Session of Durham District Court. *Judge LaBarre* in accord with the verdict entered judgment dismissing the action with prejudice on 14 January 1980. The Court of Appeals found no error.[1] The Supreme Court granted discretionary review on 4 June 1981.

*Newsom, Graham, Hedrick, Murray, Bryson & Kennon by James M. Tatum, Jr.; Robert B. Glenn, Jr., attorneys for plaintiff appellant.*

*Claude V. Jones, attorney for defendant appellee.*

EXUM, Justice.

Plaintiff, holder of legal title as trustee, seeks by this summary ejectment action to regain possession of premises currently possessed by defendant as lessee. Plaintiff asserts that defendant failed to give timely written notice of his intent to exercise his option to extend the lease; thus his refusal to surrender possession after the expiration of the last extension is an impermissible holding over. Defendant answers that the requirement of written notice had been waived by plaintiff's predecessor in interest, that plaintiff had actual oral notice of his intent to renew, and that plaintiff failed to notify him that written notice was required to

---

1. Reported at 50 N.C. App. 662, 275 S.E. 2d 494 (1981).

be directed to Wachovia. Thus, he alleges, plaintiff is estopped from asserting the requirement of written notice.

The most significant question raised by this appeal is whether there was sufficient evidence of estoppel to justify submission of the case to the jury. Additional questions are whether the jury was properly instructed and whether the trial court erred in several evidentiary rulings.

Defendant, a former football player at the University of North Carolina at Chapel Hill and a professional golfer, entered into a lease with Mr. and Mrs. William E. Baker on 12 February 1960 of some 19.03 acres of undeveloped land on the Durham-Chapel Hill Boulevard in Durham County, adjacent to what is now South Square Mall. Mr. Baker was an avid sportsman and agreed to lease the property to defendant for development as a recreational complex. Defendant's attorney drew the lease according to defendant's and Mr. Baker's wishes. The lease limited defendant's use of the property as follows:

> [A]s a part of the consideration moving to [Baker] to execute this lease [defendant] will erect on said premises a modern clubhouse, containing a golf shop, for the sale of golfing equipment and apparel, a lounge, a grille or luncheonette, and a one-unit dwelling apartment, and, in addition thereto, will erect an eighteen-hole miniature golf course, a golf driving range, a nine-hole par three golf course, and a play area for children, provided however that it is not contemplated that all of the above-referred to improvements shall be constructed or erected within a maximum prescribed period of time, but only as the necessities of the business . . . shall require.

The period of the lease was ten years, until 30 April 1969, but it granted defendant an option to extend the period for six additional five-year periods. Rent was $4,000 for the first year, $5,000 for the second, and $6,000 for the third and all subsequent years through the first four additional periods. For the fifth and sixth additional periods, the parties agreed to renegotiate the rent.

The lease provided that defendant could extend for the additional periods by giving Mr. and Mrs. Baker "written notice of his

intention to do so not later than ninety (90) days prior to the expiration of the then current term of this lease." Plaintiff and defendant stipulated that the lease was extended for two additional periods upon notice[2] by defendant to the Bakers. The first extension ran from 1 May 1969 to 30 April 1974; and the second, from 1 May 1974 to 30 April 1979.

Mr. Baker died on 9 June 1976, and Wachovia Bank and Trust Company qualified under his will as executor and trustee of his estate. Ms. Jean Holleman was assigned responsibility for the estate. Under Mr. Baker's will, a trust was established to provide income for Mrs. Baker. The trust's only remaining asset is the property leased to defendant. From Ms. Holleman's examination of the lease after Mr. Baker's death, she determined that the lease was in the middle of its second additional term. She found no writing from defendant to Mr. Baker purporting to extend the lease, although she was able to find among Mr. Baker's personal files various correspondence about the property between the two men, tax returns and ledger books recording rental payments.

In August 1976 Ms. Holleman met with defendant to discuss directing his future rental payments to Wachovia's trust department. She testified that at "my initial meeting with Mr. Rubish, he advised me that it looked like he was going to continue his business and that was his plan at that time." In an internal memorandum about an August 1977 meeting with defendant, Ms. Holleman wrote: "I was very pleased with the way our meeting with Rubish progressed. In my opinion, he went from one extreme to the other. He first stated that he would never give up his business for any reason and would fight to keep it with every means available to him. When we concluded our meeting I felt that he was quite anxious to join with us on a sale of the property at a price of $1,100,000.00 or above." In this and other discussions about a possible sale of the property[3] and appropriate division of the proceeds, she concluded that defendant considered his lease to run for forty years. She stated in her deposition that every

---

2. The stipulation, quoted *infra*, does not specify whether the notice referred to was oral or written. It is, as we later demonstrate, ambiguous on this point.

3. The parties were also negotiating and ultimately litigated the appropriate distribution of proceeds from a condemnation of a portion of the land by the N.C. Department of Transportation.

time defendant "referred to the lease, I think he always stated that it ran until 1999." She explained to defendant that the lease would effectively terminate in 1989 because the upward rental adjustment to be required at that time would make it financially unrealistic for him to continue his operations. In May 1979, after infrequent contact with defendant since August 1977, Ms. Holleman wrote defendant that his lease had terminated. The basis for this action, she testified, was defendant's failure to give notice of his intention to extend the lease as required by its terms. She claimed defendant never gave oral or written notice of his intent to extend the lease. Plaintiff accepted no rental payments after the purported termination of the lease on 30 April 1979 without first asserting that such payments would not affect its right to terminate.

Plaintiff offered expert testimony that the fair market value of the property on 1 May 1979 at its highest and best use was $1,150,000[4] and its fair market annual rental value was $50,000. Its most profitable use would be as a free standing commercial establishment such as a discount store, and not in its present use as a golfing complex.

Defendant testified that he has constructed on the property a nine-hole, par three golf course, a golf driving range, two eighteen-hole miniature golf courses, and a clubhouse with golf shop and grill. Almost all of these improvements were made before Mr. Baker's death and were intended to have a forty-year life. A corporation in which defendant apparently is the sole stockholder owns "Mike Rubish's Golf City," and defendant personally manages the property.

Defendant admitted that he had not given written notice[5] of renewal of the lease to Wachovia before 1 May 1979. When he

---

4. Although defendant, under the lease, had the right of first refusal on any sale of the property, there were several other potential buyers who had expressed an interest in purchasing the property. Defendant testified that he would have acquiesced in a sale to a third party if a fair division of the proceeds were agreed upon, because Ms. Holleman had explained that such a sale might be necessary to obtain liquid assets sufficient for Mrs. Baker's expenses.

5. On direct examination of defendant the following occurred:

Q. Was any written notice given to—

MR. GLENN: Objection, Your Honor.

received the letter of termination he was "dumbfounded" and "panicky." Defendant admitted that he wrote a letter purporting to extend his lease, predated it, and sent it to Mrs. Baker. He later informed his attorney that he had not written such a letter, and told him "to file an amendment to the Answer filed in the action to eliminate any defense based on the allegation that I had written a letter to Mrs. Baker in December of 1978." He said he fabricated the letter because he thought it was the best way to fight eviction. He then admitted what he had done was wrong and apologized to the court.

With regard to the negotiations between defendant and Wachovia, he stated:

> The first time I went to see Mrs. Holleman after she became Executor of the estate we discussed the lease and I told her that I was satisfied with it because I thought it was very reasonable and that it was made for my benefit because we knew it might not be a very lucrative profession. I told Mrs. Holleman that I was interested in staying as a manager and supervisor of Golf City, that I enjoyed my work and I had worked so hard to build that place as it is today as a

Q. —Mr. Baker?

MR. GLENN: I asked to be heard.

COURT: All right, ladies and gentlemen, if you would.

[The jury was excused, the objection sustained, and evidence taken for the record.]

Direct examination of Mr. Rubish continued:

Q. Mr. Rubish, did you ever give notice of renewal of this lease either to Mrs. Baker or to the bank or to anyone else before May 1st, 1979?

MR. GLENN: Objection.

COURT: Sustained as to "anyone else." You may answer as to the other portion of the question. That is, you may answer, Mr. Rubish, as to whether or not you gave notice to the Bank or to Mrs. Baker.

A. No, sir.

Standing alone, the last question and answer appear to be an admission by defendant that he never gave any sort of notice, oral or written, to Mrs. Baker or Wachovia. When read in context, however, it is clear that defendant is testifying only that he never gave *written* notice to plaintiff before 1 May 1979.

first class recreational park. I also felt that it was an asset to the community.

Later on, in our second conference, Mrs. Holleman indicated to me that Mrs. Baker was in trouble financially with the taxes. I felt that with my close relationship with Mr. Baker and Mrs. Baker in the past, that I was willing to give up my place and help her out if we could negotiate selling because I thought that this might help me find another location. I was trying to help Mrs. Baker if I could and that's the reason why I was considering selling.

I tried to negotiate. I would have been willing to sell my place if we could have divided the money on a satisfactory basis. In my opinion the Executor never made any extra effort to contact me. They waited two years to make any attempt to negotiate with me. I tried and I went to a lot of Mr. Baker's friends and tried to persuade and tried to get some information. I tried every way I possibly could but I felt like I was bucking a wall.

Other witnesses testified on Mr. Baker's close relationship with defendant and his interest in the property. They also testified to defendant's community activities and his good reputation in the community.

Additional testimony by defendant and some of his witnesses was not admitted by the trial court based on its interpretation of the Dead Man's Act, G.S. 8-51, and the Statute of Frauds.

The jury found Wachovia had waived the requirement of written notice and judgment was entered in defendant's favor. The jury did not reach the question whether Wachovia was estopped to assert the written notice requirement. The issues submitted and the jury's answers were:

1. Did the plaintiff waive the requirement that defendant give written notice of his intention to renew the lease 90 days prior to the termination of the lease?

ANSWER: YES.

2. Is the plaintiff estopped from requiring the defendant to give written notice of his intention to renew the lease 90 days prior to the termination of the lease?

ANSWER:

3. Does the defendant under the lease agreement dated February 12, 1960, wrongfully hold over and wrongfully withhold possession of the property from the plaintiff?

ANSWER:

4. If so, what damages is the plaintiff entitled to recover of the defendant?

ANSWER:

The trial court instructed on the waiver issue that "[w]aiver is the intentional surrender of a known right or privilege," and that "intention may be expressed or implied from acts or conduct naturally and justly leading the other party to believe that a right has been intentionally foregone." In applying these concepts to defendant's evidence, he stated that "defendant has offered evidence which he alleges tends to show that through a course of dealing over the years with the plaintiff Bank that the plaintiff Bank has waived the requirement that the defendant give written notice of his intent to renew the lease, and that no such written notice was required in the past."

I.

The primary questions for decision are whether there is evidence to support defendant's assertion of waiver or estoppel, or both, and whether the jury was properly instructed on these issues. We conclude there is evidence from which a jury could find Wachovia was estopped to require written notice but that the jury was not properly instructed nor were the issues correctly formulated.

In determining the sufficiency of the evidence in a civil case, the evidence must be interpreted most favorably to the party with the burden of proof. If there is enough evidence of each element of the claim so that "reasonable men may form divergent opinions of its import, the issue is for the jury." *State Auto. Mutual Ins. Co. v. Smith Dry Cleaners, Inc.*, 285 N.C. 583, 587, 206 S.E. 2d 210, 213 (1974). Defendant bore the burden of establishing his affirmative defenses. *Peek v. Wachovia Bank & Trust Co.*, 242 N.C. 1, 12, 86 S.E. 2d 745, 753 (1955). Thus, defendant was re-

quired to offer evidence that Wachovia had waived or was estopped to demand written notice.

The giving of notice to extend a lease in accordance with the terms of the lease is a condition precedent to extension of the lease. *Kearney v. Hare*, 265 N.C. 570, 574, 144 S.E. 2d 636, 639 (1965). Such notice, however, is for the benefit of the lessor and may be waived by him. *Coulter v. Capitol Finance Co.*, 266 N.C. 214, 146 S.E. 2d 97 (1966); *Kearney v. Hare, supra.* The meaning of "waiver" in this context is at best elusive. *See* 5 W. Jaeger, Williston on Contracts §§ 678-79 (3d ed. 1961); 31 C.J.S., *Estoppel* § 61 (1964). " 'Waiver,' has been defined as 'an intentional relinquishment of a known right.' [Citations omitted.] A person *sui juris* may waive practically any right he has unless forbidden by law or public policy. The term, therefore, covers every conceivable right—those relating to procedure and remedy as well as those connected with the substantial subject of contracts. Sometimes they [waivers] partake of the nature of estoppel and sometimes of contract. . . . No rule of universal application can be devised to determine whether a waiver does or does not need a consideration to support it. It is plain, then, that in the *nature* and *occasion* of the particular waiver must lie the answer as to whether or not it requires such consideration." *Clement v. Clement*, 230 N.C. 636, 639-40, 55 S.E. 2d 459, 461 (1949) (emphases original).

In the context of a landlord-tenant relationship, whether consideration need support waiver of notice depends upon whether the waiver occurs after notice is due and failure to give notice has occurred or before notice becomes due. A lessor, as well as other parties to a contract, may waive the *breach, i.e.,* failure to give notice when due, of a lease or other contractual provision or condition. Such a waiver is valid even if not supported by consideration or estoppel when:

(1) The waiving party is the innocent, or nonbreaching party, and

(2) The breach does not involve total repudiation of the contract so that the nonbreaching party continues to receive some of the bargained-for consideration. . . . and

(3) The innocent party is aware of the breach, and

(4) The innocent party intentionally waives his right to excuse or repudiate his own performance by continuing to perform or accept the partial performance of the breaching party.

*Wheeler v. Wheeler*, 299 N.C. 633, 639, 263 S.E. 2d 763, 766-67 (1980) (principles applied to separation agreement).

Thus, in *Coulter v. Capitol Finance Co., supra*, 266 N.C. at 218, 146 S.E. 2d at 100, the Court held that when "a lessee remains in possession without giving the prescribed notice, the lessor has an election to treat him as a trespasser or to waive the notice and treat him as holding by virtue of an extension of the lease. Acceptance by the lessor of the rent which the lease provides shall be paid during the extended term is a waiver of such notice by the lessor, nothing else appearing. [Citations omitted.] This is especially true where, as here, the lease provides that, in event of an extension of the term, the rent shall be increased." *See also First-Citizens Bank & Trust Co. v. Frazelle*, 226 N.C. 724, 40 S.E. 2d 367 (1946).

Parties may also waive the performance of a condition of a contract before time for performance is due. *Lenoir Mem. Hospital, Inc. v. Stancil*, 263 N.C. 630, 139 S.E. 2d 901 (1965). If the waiver is of a formal, as opposed to a substantial, right or privilege, then no consideration is needed to support it.[6] *Id.* at 634, 139 S.E. 2d at 903. However, an *agreement* to waive a substantial right or privilege, thus altering the terms of the original contract, must be supported by additional consideration, or an estoppel must be shown. *Wheeler v. Wheeler, supra*, 299 N.C. at 637, 263 S.E. 2d at 765. *But see* Restatement (Second) of

---

6. The right to renew a lease has been treated as a substantial, rather than a formal right. The right to renew is lost if the lease sets forth a time before which notice must be given of an intent to renew, and notice is not given, unless there is a waiver of the notice provisions. *See, e.g., Merchants Oil Co. v. Mecklenburg County*, 212 N.C. 642, 194 S.E. 114 (1937). The rationale for this rule is the principle that "time is of the essence of an option, and that the giving of notice, as stipulated, is a condition precedent to the vesting of the renewal right. Thus a privilege of renewal upon written notice given at a certain time prior to the expiration of the lease is held to be an obligation of which time is of the essence, is valid, and must be strictly construed." 3 G. Thompson, Thompson on Real Property § 1122 (Rep. 1980) (footnotes omitted). *See also Elm & Greene Streets Realty Co. v. Demetrelis*, 213 N.C. 52, 194 S.E. 897 (1938); *Eureka Lumber Co. v. Whitley*, 163 N.C. 47, 79 S.E. 268 (1913).

Contracts § 89 (1981) (modification of executory contract needs no consideration if fair and equitable in light of unanticipated circumstances or if allowed by statute or if detrimental reliance). "[A] waiver of a legal right, which right is to be, or may be asserted in the future, where the waiver for want of essential elements of that principle, cannot operate as an estoppel, requires a consideration as much as an agreement by any other name." *Clement v. Clement, supra,* 230 N.C. at 640, 55 S.E. 2d at 461. *See also,* J. Calamari & J. Perillo, Contracts § 11-36 (1977).

The use of "estoppel" as a ground for "waiver" sometimes leads to confusion as to exactly what must be proved by the party asserting the estoppel. This is illustrated in the instant case by the defendant's pleading and the trial court's instructions on estoppel.[7] In order to prove a waiver by estoppel defendant need not prove all elements of an *equitable* estoppel, for which proof of actual misrepresentation is essential; neither need he prove consideration to support the waiver. Rather, he need only prove an express or implied promise by Wachovia or Mr. Baker to waive the notice provision and defendant's detrimental reliance on that promise.

An older case from a sister state, quoted in 3A A. Corbin, A Comprehensive Treatise on the Rules of Contract Law, *Waiver and Estoppel* § 752 n. 4 (1960), offers a lucid explanation of waiver by estoppel.

> It is stated that to constitute a waiver there must be either a contract supported by consideration or the necessary elements of estoppel. [Citations omitted.] If the 'estoppel' of this alternative means the ordinary equitable estoppel, a necessary element of which is the misstatement of an existing fact, this court has not so held. . . . A waiver may, as appears in some cases, have also the elements of equitable estoppel. A waiver may be supported by consideration. But it will appear from the decisions of this court that, to constitute a waiver where there is no consideration, there must be a promise or permission, express or implied in fact, supported only by action in reliance thereon, to excuse performance in

---

7. Defendant alleged Wachovia was equitably estopped from dispossessing defendant of his leasehold interest. The trial court set forth the elements of equitable estoppel in its instructions on the estoppel issue.

the future of a condition or of an obligation not due at the time, when the promise is made, or to give up a defense not yet arisen, which would otherwise prevent recovery on an obligation. Though there is often said to be in such case an estoppel and the case said to be distinguishable from a waiver, there is not a true estoppel, for there is no misrepresentation of an existing fact. It may be called 'a promissory estoppel.' [Citations omitted.] We think that this distinction will harmonize many decisions and will clarify what appears to be some confusion of definition and expression.

*Colbath v. H. B. Stebbins Lumber Co.*, 127 Me. 406, 414-15, 144 A. 1, 5 (1929). *See also*, 5 W. Jaeger, Williston on Contracts, *supra*, §§ 678, 679, 689-92; Restatement (Second) of Contracts §§ 89(c), 90 (1981).

These principles are reflected in our own cases, even though they may not have been quite so clearly expounded. For example, in *Kearney v. Hare, supra*, 265 N.C. at 575, 144 S.E. 2d at 640, the Court found that the lessor had waived the requirement of further notice from the lessee of his intent to extend the lease. The Court noted:

This is not the case of a landowner accepting a payment for the use of his land after the original term expired and when the tenant has already lost his right to extend the lease and the lessor has acquired a right to be paid for the use of the land during the holding over. Here, the lessor requested the tenant to pay the second year's rent before the lessor was entitled thereto and while the tenant still had the right to give the notice specified in the lease. By requesting and accepting payment of rent for the second year under those circumstances, the lessor lulled the tenant into the belief that the extension of the term through the second year was an accomplished fact and so cannot, after the expiration of the time for giving notice, be heard to say that this condition precedent to extension has not been met.

Although the advance payment of the rent might have constituted consideration to support an implied agreement to waive notice, the Court apparently viewed the situation as one in which the lessor was simply estopped to demand notice. The estoppel

arose because of lessor's implied promise not to demand written notice after requesting advance rental payments and the lessee's reliance on that promise in not giving written notice.

[1] In the instant case there is no evidence of new consideration to support a change in the lease's notice requirement. Neither is there evidence that Wachovia waived written notice after the time that notice was due. The evidence is that Wachovia consistently asserted it had a right to terminate since shortly after the purported termination date. Indeed, as a fiduciary Wachovia may have breached its duty to Mrs. Baker if it had waived defendant's breach of the notice provision. *See Merchants Oil Co. v. Mecklenburg County*, 212 N.C. 642, 645, 194 S.E. 114, 116 (1937). Nor is there sufficient evidence to support a finding that Wachovia's actions since Mr. Baker's death estopped it from asserting the written notice requirement. Although there is evidence that Wachovia fully expected defendant to extend his lease, there is no evidence that Ms. Holleman or some other representative told defendant that he did not need to give written notice. Merely negotiating with defendant was not enough reasonably to convey the impression that the lease would be extended without written notice. Thus, the actions of Wachovia are not enough to support a finding of waiver or estoppel.

There is, however, evidence from which the jury could find that Wachovia was estopped to demand written notice upon the theory of promissory, as opposed to equitable, estoppel. The theory rests on the proposition that Mr. Baker had waived two breaches of the condition of written notice, and defendant had relied on the promise implied from these waivers that no written notice would be thereafter required. Thus, Mr. Baker, had he lived, would be estopped from asserting the requirement of written notice without informing defendant that written notice would be required, and Wachovia stands in the shoes of Mr. Baker.

With regard to the evidentiary support for this theory, the record is clear that some sort of notice was given to Mr. Baker in the past. The parties stipulated: "The lease was extended for two (2) additional terms of five (5) years each by the defendant, Mike Rubish, by giving notice to the parties of the first part." The stipulation is patently ambiguous, however, on whether the notice given was oral or written. By asserting that written notice is

presently required, Wachovia must mean that it was given in the past. Defendant, on the other hand, must mean that only oral notice had been given in the past and one standing in the shoes of Mr. Baker could require no more. By joining in this ambiguous stipulation, Wachovia has opened the door to testimony by defendant, some of which was improperly excluded, on the nature of the notice defendant gave to Mr. Baker.[8] In addition, however, to the testimony improperly excluded at trial, defendant offered evidence to the effect that no written notice was found among the papers which Mr. Baker maintained relating to the lease; that Mr. Baker and defendant enjoyed a close friendship; and that Mr. Baker's interest in defendant's golf complex transcended economic considerations.[9]

Thus, there is evidence from which a jury could reasonably infer that Mr. Baker had not insisted on written notice but had accepted only oral notice as sufficient to extend the lease. If such a finding were made, the following legal propositions obtain: If Mr. Baker were alive, he would be estopped by his prior conduct and by defendant's reliance on it to demand written notice; for, in the words of *Kearney v. Hare, supra,* 265 N.C. at 575, 144 S.E. 2d at 640, Mr. Baker would have "lulled" defendant into believing written notice was not necessary. *See* J. Calamari & J. Perillo, The Law of Contracts § 11-36 (1977). Because Wachovia, as executor and trustee of Mr. Baker's will, stands in Mr. Baker's shoes, it can assert no better right than Mr. Baker could have asserted to a written notice requirement. *See Hayes v. Ricard,* 244 N.C. 313, 324, 93 S.E. 2d 540, 549 (1956); *First-Citizens Bank & Trust Co. v. Frazelle, supra,* 226 N.C. at 728, 40 S.E. 2d at 370 (1945); *Redevelopment Comm. of Greenville v. Hannaford,* 29 N.C. App. 1, 4, 222 S.E. 2d 752, 754 (1976). Thus Wachovia, without some clear statement to defendant that it expected written notice to be given before notice was due, could demand only that defendant give it oral notice of his intention to extend the lease for an additional term. Wachovia would be estopped to demand more.

8. This aspect of the case is fully discussed in Part II of this opinion.

9. Mr. Baker was an avid sportsman, even providing for the disposition of his sporting equipment, trophies, and mementos in his will. According to Mrs. Baker and other witnesses, he visited the property frequently to watch the progress of defendant's golf complex. Mr. Baker and defendant were personal friends, and Mr. Baker was proud of the way defendant was developing the recreational facilities.

Evidence that defendant gave oral notice to Wachovia of the kind Mr. Baker had accepted may be found in defendant's statement to Ms. Holleman in their initial meeting that "he was going to continue his business and that was his plan at that time," reinforced by the implied assertion in his frequent statements in negotiations that his lease continued until 1999.

In conclusion, there is no evidence to support the first issue as the jury was instructed on it. There is evidence to support submission of an estoppel issue on the theory we have outlined. There is also evidence that Wachovia received oral notice of defendant's intention to extend the lease. On retrial the issues submitted should be (1) whether Wachovia is estopped to demand written notice and (2) if so, whether Wachovia received oral notice. Defendant must bear the burden of proof on both issues in order to prevail.

## II.

[2] The second question, raised by defendant's cross-assignments of error under Rule 10(d) of the Rules of Appellate Procedure, is whether the trial court erred in its rulings on the admissibility of certain testimony. Plaintiff asserted that some of defendant's evidence was barred by the Dead Man's Act and the Statute of Frauds. Portions of the evidence offered by defendant were improperly excluded on those grounds.

The Dead Man's Act, G.S. 8-51, provides in pertinent part:

Upon the trial of an action, . . . a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator or survivor of a deceased person, or the committee of a lunatic, or a person deriving his title or interest from, through or under a deceased person or lunatic, by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person or lunatic; except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf . . . .

Defendant is precluded by the Act from testifying on "personal transaction[s]" he had with Mr. Baker unless plaintiff first "opens the door" by offering evidence about a particular transaction. *See Peek v. Shook*, 233 N.C. 259, 261, 63 S.E. 2d 542, 543 (1951);[10] *Bunn v. Todd*, 107 N.C. 266, 11 S.E. 1043 (1890); 1 Stansbury's N.C. Evidence §§ 66-75 (Brandis 2d Rev. 1982). We believe plaintiff did "open the door" when it, as Mr. Baker's personal representative, joined in an ambiguous stipulation, quoted *infra* in Part I of this opinion, on the character of the notice given by defendant to Mr. Baker for previous extensions. The plaintiff having thus "opened the door," it is for the court to decide what testimony favorable to defendant may be admitted. *Herring v. Ipock*, 187 N.C. 459, 463, 121 S.E. 758, 760 (1924); *Cheatham v. Bobbitt*, 118 N.C. 343, 348, 24 S.E. 13, 14 (1896). Defendant's testimony must be confined to the same transactions referred to in the stipulation. *Herring v. Ipock, supra*, 187 N.C. at 463, 121 S.E. at 760. Thus, defendant's testimony admissible under this exception to the Dead Man's Act is that which goes to the sort of notice — oral or written — Mr. Baker had accepted from him in the past. Defendant's testimony that he had not given written notice for previous extensions of the lease should have been admitted to the extent it bore directly on the nature of the notice which he had actually given in the past and Mr. Baker's response to it. Defendant could not, however, offer testimony explaining that he had not given written notice in the past because Mr. Baker had told him before the first notice was due that it was not necessary. The stipulation opens the door only to testimony on the form of notice actually given to Mr. Baker and its efficacy in extending the lease, not to testimony that Mr. Baker expressly agreed initially to accept less than written notice. Were it not for the Dead Man's Act, it appears defendant could offer proof of promissory estoppel based on express promises by Mr. Baker that written notice was not required. Because of the Act's application, however, defendant must prove his case if at all by way of an implied promise which the jury may find from the course of conduct between defendant and Mr. Baker relative to the notice requirement.

---

10. *Peek v. Shook, supra*, contains a definitive exegesis of the Dead Man's Act.

In addition, the testimony of Helen Cuffori, William Boone and Mike May regarding their conversations with Mr. Baker should not have been excluded on the basis of the Dead Man's Act because they were not witnesses with a pecuniary or legal interest. *Rape v. Lyerly,* 287 N.C. 601, 621-23, 215 S.E. 2d 737, 750 (1975); *Peek v. Shook, supra,* 233 N.C. at 261, 63 S.E. 2d at 543. Plaintiff has conceded this point in its reply brief.

[3] Defendant argues error in the trial court's exclusion of portions of the testimony of Mike May, Helen Cuffori, and William Boone on the ground that it was barred by the Statute of Frauds. The excluded testimony consisted primarily of statements by Mr. Baker to the effect that defendant had a "forty-year lease." At trial, defendant argued that these statements were offered to prove Mr. Baker's waiver of the notice requirement, while plaintiff argued they tended to show an oral modification of the lease.

These statements, standing alone, do not show a modification of the existing lease based on an exchange of new consideration between Mr. Baker and defendant. At most they show Mr. Baker impliedly promised to forego the notice requirement altogether. Such a promise is enforceable only if it induced detrimental reliance by defendant. Restatement (Second) of Contracts § 90 (1981). Furthermore, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires." Restatement (Second) of Contracts § 139 (1981). This view is consistent with that found in cases in which this Court has recognized exceptions to the Statute of Frauds. For example, in *Faw v. Whittington,* 72 N.C. 321, 323 (1875), Justice Bynum wrote: "It cannot be denied that there may be a parol waiver or renunciation of many rights touching land, which are often secured by the written contract . . . ." *See also Scott v. Jordan,* 235 N.C. 244, 69 S.E. 2d 557 (1952) (executory contract to sell or convey real property may be abandoned by an oral agreement); *Bell v. Brown,* 227 N.C. 319, 42 S.E. 2d 92 (1947).

Although neither the Dead Man's Act nor the Statute of Frauds renders this testimony inadmissible, the testimony, stand-

ing alone, falls far short of showing that Mr. Baker had waived by estoppel the lease's notice requirements altogether. His statements, if he made them, that defendant had a forty-year lease are consistent with a layman's understanding of the terms of the lease as written, for defendant did have a lease which could be extended, upon his option, for as long as forty years. Furthermore, defendant's proffered testimony that Mr. Baker had promised to waive even oral notice in the future was properly excluded on the ground of the Dead Man's Act, since the stipulation opened the door only wide enough to permit defendant to testify as to the form of notice given to and accepted by Mr. Baker for the previous extensions. It did not open the door wide enough to permit defendant to testify that Mr. Baker had, in effect, waived by estoppel all future notice, oral as well as written.

The testimony of the witnesses May, Cuffori and Boone that Mr. Baker said defendant had a forty-year lease was properly excluded because, standing alone, its probative value was "so slight as not reasonably to warrant the inference of the fact in issue or furnish more than materials for a mere conjecture." *Brown v. Kinsey*, 81 N.C. 245, 250 (1879). To admit it, therefore, would serve only to confuse the issues for the jury. *Pettiford v. Mayo*, 117 N.C. 27, 23 S.E. 252 (1895); 1 Stansbury's N.C. Evidence § 77 (Brandis 2d Rev. 1982).

Additional assignments of error which were not briefed and argued by the parties before this Court are deemed abandoned under Rule 28(b)(3) of the Rules of Appellate Procedure.

For the reasons given, the decision of the Court of Appeals finding no error in the trial below is reversed and the case is remanded for a new trial to be conducted in a manner not inconsistent with this opinion.

Reversed and remanded for new trial.

Justices MITCHELL and MARTIN took no part in the consideration or decision of this case.